OPINION
 

 JOHN S. ANDERSON, Justice.
 

 A jury convicted appellant of the felony offense of possession with intent to deliver a controlled substance, cocaine, weighing more than one gram and less than four grams. The indictment included two enhancement paragraphs that the jury found to be “true,” and the jury assessed punishment at confinement for 99 years in the Texas Department of Criminal Justice, Institutional Division. Appellant asserts a single issue on appeal: whether the evidence is legally sufficient to support his conviction for possession with intent to deliver more than one gram of cocaine. We affirm.
 

 Factual BackgRound
 

 On April 30, 2003, around 2:30 p.m., Officer Jason Dunn was conducting surveillance and watching for criminal activity in an unmarked police car near downtown Houston when he observed a narcotics transaction take place between appellant and another individual. After the transaction was complete, Officer Dunn observed appellant walk away from the individual and down the street where appellant met up with a second individual. Officer Dunn radioed other officers in the area, informed
 
 *823
 
 them of the transaction he had observed, and provided the officers with descriptions of appellant and the other individuals involved.
 

 Officers M.V. Richard and J.E. Price, both in uniform and in marked patrol cars, were located nearby and responded to Officer Dunn’s call. Officer Dunn observed Officers Richard and Price pull up in their patrol cars to where appellant and the second individual were standing. When Officer Price got out of his car, appellant and the other individual ran in opposite directions. Officer Dunn testified that Officer Richard chased and captured the individual involved in the first narcotics transaction, and Officer Price chased after appellant.
 

 Officer Price testified that he received a call over the radio from Officer Dunn describing a suspect, what he was wearing, and his direction of travel. When Officer Price pulled up to where appellant and the second individual were standing, they appeared to be exchanging something. Officer Price got out of his patrol car, and both appellant and the other individual took off running. Officer Price chased after appellant, and during the chase, appellant climbed over a fence. Officer Richard was on the other side of the fence where appellant was, and Officer Price then saw appellant dive underneath a house situated on cement blocks in an attempt to get away. Officer Richard grabbed and struggled with appellant’s legs which were sticking out from underneath the house and pulled appellant out. Officer Richard searched appellant and found a bag of marijuana in his pocket. Officer Richard crawled underneath the house where appellant had been, and when Officer Richard reappeared, he was holding several white chunky substances that appeared to be crack cocaine.
 

 Officer Richard testified that he approached and detained the individual involved in the first narcotics transaction with appellant, and after checking out the individual’s information on the police computer, he drove to the location where Officer Price was last known to be chasing appellant. He saw appellant hanging from a fence and fall to the other side, at which time Officer Richard ran around the front of the house to the other side. He observed appellant crawl underneath a house situated on cement blocks and get stuck. Officer Richard grabbed and struggled with appellant’s legs, and he saw appellant reach into his front pocket and throw several white “chunks” on the ground in front of him underneath the house. Officer Richard pulled appellant from underneath the house and arrested him. Officer Richard crawled underneath the house to recover the loose rocks of cocaine. He testified that eight rocks of cocaine were recovered, and there was some dirt and mud on the rocks because it was muddy underneath the house.
 

 J.K. Carpenter, a drug chemist for the Houston Police Department, testified that he conducted three tests on the white rocks to determine whether the rocks were crack cocaine, and all three tests confirmed the rocks were cocaine. He weighed the rocks without the bag they were in, and the weight of the rocks, including any adulterants and dilutants, was approximately 1.7 grams. He testified that the rocks were 72.2 percent pure cocaine. The eight rocks of cocaine were admitted into evidence.
 

 Defense counsel asked Carpenter how much the dirt and grass on the cocaine weighed, and Carpenter responded that he “pick[ed] as much of the dirt and grass as [he] could off of it and just weighed the material itself [and][a]pproximately 1.7 grams remain[ed].” When asked whether there is any dirt or grass in the cocaine, Carpenter responded, “Still a tiny bit left.” As to whether he weighed the dirt, Car
 
 *824
 
 penter stated that he did not, and he testified that he considered the dirt to be a dilutant. Upon further cross-examination, he testified that generally he tries “to scrape off as much of the stuff off of it as [he] can, the dirt that covers it.... Because [he] want[s] the analysis to be [as] pure as [he] can get it.” He testified that people do not cut cocaine with dirt, but he considered “these small, tiny trace microscopical [sic] amounts on there.” He stated that he had seen cocaine cut with sand.
 

 Discussion
 

 On appeal, appellant argues that “[b]ecause the State could only give an ‘approximate’ weight of the aggregate substance and it improperly included an indeterminate amount of ‘dirt and mud’ in the amount as a ‘dilutant,’ the jury could only surmise whether the weight of the cocaine was over one gram.” Appellant contends the State failed to meet the high standard of proof beyond a reasonable doubt for the following two reasons: (1) contrary to Carpenter’s testimony at trial, the dirt and mud were not dilutants and should not have been included in the aggregate weight to increase the level of the offense; and (2) the State was only able to give an “approximate” weight of the rocks and failed to segregate the weight of the dirt and any other foreign substances remaining on the eight rocks.
 

 In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 See Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Here, the indictment charged that on or about April 30, 2003, appellant “did then and there unlawfully, knowingly possess with intent to deliver a controlled substance, namely, Cocaine, weighing more than 1 gram and less than 4 grams by aggregate weight, including any adulterants and dilutants,” and the jury found appellant guilty of this second degree felony offense.
 
 See
 
 Tex. Health & Safety Code Ann. § 481.112(a), (c) (Vernon 2003). We review whether the evidence is legally sufficient to prove the weight of the cocaine was more than one gram.
 

 To obtain a conviction for possession of a controlled substance, the State must prove that a controlled substance, plus adulterants and dilutants proved to exist within it, weighs at least as much as the minimum weight alleged in the indictment.
 
 Hines v. State,
 
 976 S.W.2d 912, 912 (Tex.App.-Beaumont 1998, no pet.). An adulterant or dilutant is defined by the Texas Health and Safety Code as “any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance.” Tex. Health
 
 &
 
 Safety Code Ann. § 481.002(49) (Vernon Supp.2004-2005). The State is not required to prove that any added adulterants or dilutants did not affect the chemical activity of the controlled substance. Essentially, the State only needs to demonstrate that part of a substance is a controlled substance and that the aggregate weight exceeds the minimum statutory amount.
 
 [1]
 

 Melton v. State,
 
 120 S.W.3d 339, 344 (Tex.Crim.App.2003).
 

 
 *825
 
 The State’s drug chemist, Carpenter, testified that the eight rocks of cocaine weighed 1.7 grams, of which 72.2 percent was pure cocaine, and that the dirt on the rocks was “small, tiny trace microscopical [sic] amounts.” Carpenter also testified that he considered the dirt on the rocks to be a dilutant. The specific facts and circumstances of this case lead to the conclusion that the dirt on the rocks
 
 is not
 
 a “dilutant” as that term is defined by the Health and Safety Code. However, the eight rocks of cocaine were admitted into evidence, and the jury saw the cocaine. Pictures of the cocaine also are included in the appellate record and reveal only tiny flecks of dirt on the rocks of cocaine.
 

 The fact that the cocaine was not infused with dirt but had only minute particles of dirt supports the jury’s conclusion that the net weight of the eights rocks of cocaine exceeded one gram, and this constitutes a rational inference from empirical data. To reduce the weight of the cocaine to less than one gram would have required the presence of at least .7 grams of dirt, approximately forty percent of the gross weight of the entire cache of narcotics. Based on the jurors’ own inspections of the cocaine and Carpenter’s testimony, the jury reasonably could have concluded that the aggregate weight of the rocks was more than one gram.
 
 See Melton,
 
 120 S.W.3d at 343-44. Accordingly, when viewed in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt all of the elements of the offense charged in the indictment including the element that appellant possessed cocaine in an amount of less than four grams but more than one gram. We overrule appellant’s sole issue.
 

 The judgment of the trial court is affirmed.
 

 [1]
 

 . Appellant cites the unpublished opinion
 
 Seals v. State,
 
 No. 05-03-01105-CR, 2004 WL 639678 (Tex.App.-Dallas 2004, pet. granted) (not designated for publication), in support of his contention that the State was required to segregate and weigh the dirt on the rocks of cocaine.
 
 Seals
 
 is distinguishable from the case at bar and involved the issue of whether blood that becomes mixed with methamphetamine when the methamphetamine is being injected is an adulterant or dilutant under the Texas Health and Safety Code. 2004 WL 639678, at * 2. The vial at issue in
 
 Seals
 
 contained methamphetamine, blood, and ni-cotinamide (vitamin B) weighing 1.50 grams. 2004 WL 639678, at * 1. The Dallas Court of
 
 *825
 
 Appeals held blood is not a dilutant and reversed the judgment of conviction, reasoning that the jury should not have considered the blood in determining the aggregate weight of the controlled substance since the jury was provided (1) no other explanation for the blood in the vial; (2) no weight of the substance in the vial minus the blood, and (3) no evidence the blood was mixed with the methamphetamine as the result of anything other than appellant’s explanation, which was that when he tried to inject himself and was unsuccessful, blood would enter the syringe, and he would squirt what could not be used into the vial.
 
 Id.
 
 Unlike
 
 Seals,
 
 in this case, the jury reasonably could have concluded that the aggregate weight of the rocks was more than one gram based on the jurors’ own inspections of the cocaine and Carpenter’s testimony.