Kareem Germann **ERSKINE**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 10–05–00194–CR.

Court of Appeals of Texas, Waco.

March 29, 2006.

Peter A. Lesser, Dallas, for appellant.

Joe F. Grubbs, Ellis County Dist. Atty., Waxahachie, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted Kareem Germann Erskine of possession of cocaine in the amount of 4 grams or more but less than 200 grams with intent to deliver and assessed his punishment at eighteen years' imprisonment. Erskine contends in two points that: (1) the evidence is legally insufficient because the State failed to establish how much of the substance at issue was actually cocaine; and (2) the evidence is factually insufficient to prove (a) how much of the substance at issue was actually cocaine or (b) that he had the requisite intent to deliver the substance. We will affirm.

### Factual Background

Officer Jason Chapman stopped the car Erskine was driving for playing loud music in violation of a Waxahachie municipal ordinance. When Chapman turned on the overhead lights of his patrol car, Erskine pulled the car into a driveway. Erskine "quickly exited" the car, went to the front corner of the car "somewhere between the tire and the front bumper, leaned down real quick, and stood back up and waited there." Chapman detected a strong odor of burning marihuana as he approached Erskine. Erskine explained that he had just been in an argument with his girlfriend and had smoked some marihuana in the car.

During a search of the car, Erskine found marihuana seeds in the front seat, a money bag in the glove compartment containing $1,013.00 in currency, and a shoebox in the trunk containing $125.00 in rolled coins. Another officer found a clear plastic baggy lying on the ground right near the tire where Erskine had leaned over. The baggy contained numerous rocks of cocaine which were wrapped individually in smaller plastic bags.

A DPS lab analyst testified that the net weight of the rocks was 5.06 grams and that they contained cocaine.

Erskine called his girlfriend Selene Duty to testify on his behalf. Duty testified that the car Erskine was driving was hers. She stated that the currency in the glove compartment belonged to her and was the portion of her income tax refund which she had not yet spent. Erskine

offered in evidence a statement indicating that Duty had received a tax refund of $3,788. Duty testified that she had been saving the coins found in the trunk as a gift for her grandbaby.

## Standards of Review

■ When reviewing a legal insufficiency complaint, we consider all the evidence in the record and ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Moff v. State,* 131 S.W.3d 485, 488 (Tex.Crim.App.2004) (quoting *Jackson v. Va.,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

■ When reviewing a factually insufficiency complaint, we ask whether the evidence supporting the verdict is "too weak to support the finding of guilt beyond a reasonable doubt" or whether the contrary evidence is so strong "that the beyond-a-reasonable-doubt standard could not have been met." *See Zuniga v. State,* 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004).

■ For both legal and factual[1] insufficiency challenges, we review the evidence against "the hypothetically correct jury charge for the case." *Fuller v. State,* 73 S.W.3d 250, 252 (Tex.Crim.App.2002) (quoting *Gollihar v. State,* 46 S.W.3d 243, 253 (Tex.Crim.App.2001) (quoting *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997))). The hypothetically correct jury charge is authorized by the indictment or information and "encompasses [the] statutory elements of the offense." *See Gharbi v. State,* 131 S.W.3d 481, 482–83 (Tex. Crim.App.2003) (quoting *Fuller,* 73 S.W.3d

at 254); *see also Gollihar,* 46 S.W.3d at 254–55; *Malik,* 953 S.W.2d at 240.

## Statutory Definitions

Erskine places primary reliance on *Reeves v. State,* in which the Court of Criminal Appeals held that the evidence was legally insufficient to sustain a conviction for delivery of amphetamine in the amount of 28 grams or more but less than 400 grams. 806 S.W.2d 540, 543–45 (Tex. Crim.App.1990). As we will explain however, *Reeves* has been effectively overruled by statutory amendments and by the adoption of the hypothetically correct jury charge as the standard for reviewing legal and factual insufficiency complaints.

As in Erskine's case, the indictment in *Reeves* did not allege that the aggregate weight of the substance at issue included adulterants and dilutants. *Id.* at 543. The State's expert testified that the substance tested had an aggregate weight of 29.76 grams and contained amphetamine. *Id.* at 543–44. The Court concluded that the evidence was legally insufficient to prove that the defendant delivered 28 grams or more of amphetamine because: (1) the State's expert could not quantify the precise amount of amphetamine in the substance tested; and (2) the State did not present evidence that the other substances combined with the amphetamine were "intended to increase the bulk or quantity of the final product, amphetamine." *Id.* at 544–45 (citing *McGlothlin v. State,* 749 S.W.2d 856, 861 (Tex.Crim.App.1988)) (other citations omitted).

Although the facts of *Reeves* are similar to those in Erskine's case, the underlying

---

1. Although the decisions of the Court of Criminal Appeals regarding the hypothetically correct jury charge all address legal insufficiency, lower courts have consistently applied this analysis to factual insufficiency complaints as

well. *See, e.g., Gearhart v. State,* 122 S.W.3d 459, 466 (Tex.App.-Corpus Christi 2003, pet. ref'd); *Villani v. State,* 116 S.W.3d 297, 307 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd).

statutory definitions have changed. The version of the Texas Controlled Substances Act applicable in *Reeves* defined a "controlled substance" as follows:

> "Controlled substance" means a drug, substance, or immediate precursor listed in Schedules I through V and Penalty Groups 1 through 4 of this Act.

Act of May 25, 1985, 69th Leg., R.S., ch. 227, § 1, 1985 Tex. Gen. Laws 1102, 1103 (amended 1987) (current version at TEX. HEALTH & SAFETY CODE ANN. § 481.002(5) (Vernon Supp.2005)). The Legislature carried a similar definition forward when it enacted the Health and Safety Code in 1989. *See* Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, sec. 481.002(5), 1989 Tex. Gen. Laws 2230, 2904 (amended 1997).[2]

The current definition provides as follows:

> "Controlled substance" means a substance, including a drug, an adulterant, and a dilutant, listed in Schedules I through V or Penalty Groups 1, 1–A, or 2 through 4. The term includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance.

TEX. HEALTH & SAFETY CODE ANN. § 481.002(5).[3] Thus, the Health and Safety Code now expressly defines the term "controlled substance" to include "adulterants" and "dilutants."

Because the terms "adulterants" and "dilutants" were not defined under the former Texas Controlled Substances Act, the Court of Criminal Appeals undertook to define them in *McGlothlin*. *See* 749 S.W.2d at 857. The Court concluded that a substance is an "adulterant" or "dilutant" only if it is "intended to increase the bulk or quantity of the final product." *Id.* at 861. Now however, the Legislature has defined the term "adulterant or dilutant" as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (Vernon Supp.2005).

■ The Court of Criminal Appeals has recently concluded that this definition effectively overruled the *McGlothlin* requirement "that the State prove intent to increase the bulk or quantity of the controlled substance." *See Seals v. State,* 187 S.W.3d 417, 420 (Tex.Crim.App.2005). Thus, "any substance that is added to or mixed with a controlled substance, regardless of when, how, or why that substance was added, may be added to the aggregate weight of the controlled substance as an adulterant or dilutant." *Id.,* 187 S.W.3d at 420; *accord Melton v. State,* 120 S.W.3d 339, 343 (Tex.Crim.App.2003).

In light of these amendments, the Court of Criminal Appeals has concluded:

> [T]he State is no longer required to determine the amount of controlled substance *and* the amount of adulterant and dilutant that constitute the mixture. The State has to prove only that the aggregate weight of the controlled substance mixture, including adulterants

---

2. The original source for this and other definitions currently in the Texas Health and Safety Code is the Uniform Controlled Substances Act. The Uniform Act currently defines a "controlled substance" as follows:

> "Controlled substance" means a drug, substance, or immediate precursor, included in Schedules I through V of [Article] 2.

UNIF. CONTROLLED SUBSTANCES ACT § 101(2) (1997).

3. The current version was enacted by the 77th Legislature in 2001. *See* Act of May 22, 2001, 77th Leg., R.S., ch. 1188, § 1, 2001 Tex. Gen. Laws 2691, 2691.

and dilutants, equals the alleged minimum weight.

*Melton,* 120 S.W.3d at 344 (citations omitted); *accord Lilly v. State,* 119 S.W.3d 900, 903–05 (Tex.App.-Eastland 2003, pet. ref'd); *Jackson v. State,* 94 S.W.3d 46, 49 (Tex.App.-Tyler 2002, pet. ref'd); *see also* Norman Silverman, *Crime Labs: Scapegoats for a Culture of Indifference,* 30 T. MARSHALL L.REV. 429, 434 (2005).

### Controlled Substance

Erskine contends in his first point that the evidence is legally insufficient because the State failed to establish how much of the substance at issue was actually cocaine. He contends in part of his second point that the evidence is factually insufficient for the same reason. Although Erskine does not refer to *Melton* or similar cases, he essentially contends that they do not apply here because neither the indictment nor the charge refers to "adulterants or dilutants." Rather, Erskine contends that, because the indictment and the charge solely refer to cocaine in the amount of 4 grams or more but less than 200 grams, the State had to prove that he possessed "only cocaine" in that amount to obtain a conviction.

■ For our analysis, we must first define the hypothetically correct jury charge. The hypothetically correct jury charge is authorized by the indictment and "encompasses [the] statutory elements of the offense." *See Gharbi,* 131 S.W.3d at 482–83. The elements for possession of a controlled substance with intent to deliver are that the defendant: (1) possessed a controlled substance in the amount alleged; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance. *See Nhem v. State,* 129 S.W.3d 696, 699 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

The indictment alleges that on the date in question Erskine "did then and there knowingly possess, with intent to deliver, a controlled substance, namely, cocaine,[4] in an amount of four grams or more but less than 400 grams." [5] The application paragraph of the charge tracked the language of the indictment. In addition, the charge defined the terms "possession," "intentionally," and "knowingly."

■ However, the charge did not instruct the jury regarding the offense of possession of a controlled substance with intent to deliver. Rather, the charge instructed the jury on the offense of simple possession of a controlled substance. In addition, the charge did not define the terms "controlled substance" and "adulter-

**4.** Because section 481.002(5) now defines a "controlled substance" to be any listed substance "including" adulterants and dilutants and because the term expressly "includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance," it is arguably unnecessary to include allegations regarding "aggregate weight" or the presence of adulterants or dilutants in an indictment. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(5) (Vernon Supp.2005). Nevertheless, the better practice may be to include such allegations. *See, e.g., Lopez v. State,* 108 S.W.3d 293, 295 (Tex.Crim.App. 2003); *Beller v. State,* 154 S.W.3d 836, 838 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd).

**5.** Based on the evidence, we presume that the State intended to charge Erskine with the 1st degree felony offense of possession with intent to deliver 4 grams or more but less than *200* grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Vernon 2003). Section 481.112(e) provides for an increased punishment range (minimum 10 years' imprisonment, maximum fine of $100,000) when the amount of the controlled substance is 200 grams or more but less than 400 grams. *Id.* § 481.112(e) (Vernon 2003).

**380**

ant or dilutant." [6]

Nevertheless, a hypothetically correct jury charge would have included these definitions and would have instructed the jury on the offense charged. *See Lilly,* 119 S.W.3d at 904–05. Thus, a hypothetically correct jury charge would have instructed the jury (with appropriate statutory definitions) to convict Erskine if the jurors found beyond a reasonable doubt that he possessed with intent to deliver cocaine in the amount of "by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams." *See* Tex. Health & Safety Code Ann. § 481.112(d) (Vernon Supp.2005).

Here, a DPS lab analyst testified that the net weight of the rocks seized from near Erskine's car was 5.06 grams and that they contained cocaine. There is no other evidence in the record regarding the weight or composition of the rocks.

After viewing the evidence in the light most favorable to the prosecution, we hold that a rational trier of fact could have found beyond a reasonable doubt that Erskine possessed a controlled substance in the amount of "by aggregate weight, including adulterants or dilutants, 4 grams or more but less than 200 grams." *See Melton,* 120 S.W.3d at 344; *Lilly,* 119 S.W.3d at 903–05; *Jackson,* 94 S.W.3d at 49–50. We likewise conclude that the evidence concerning the weight of the controlled substance is not "too weak to support the finding of guilt beyond a reasonable doubt." *See Lilly,* 119 S.W.3d at 903–05.

Thus, the evidence is legally and factually sufficient on this issue. *See Zuniga,* 144 S.W.3d at 484; *Moff,* 131 S.W.3d at 488.

Accordingly, we overrule Erskine's first point and that part of his second point which challenges the factual sufficiency of the evidence to prove the amount of the controlled substance at issue.

### Intent to Deliver

The remainder of Erskine's second point is directed to the factual sufficiency of the evidence to establish that he possessed the cocaine with an intent to deliver it.

[I]ntent to deliver may be inferred from the quantity of drugs possessed and from the manner in which they are packaged. Courts have considered several factors in determining such intent, including the following: (1) the nature of the location where the defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) the manner of packaging of the drugs; (4) the presence or absence of drug paraphernalia (for use or sale); (5) whether the defendant possessed a large amount of cash in addition to the drugs; and (6) the defendant's status as a drug user. Expert testimony may be introduced to prove intent to deliver.

*Guy v. State,* 160 S.W.3d 606, 613–14 (Tex. App.-Fort Worth 2005, pet. ref'd) (citations omitted); *accord Reed v. State,* 158 S.W.3d 44, 48–49 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd).

Here, Officer Chapman testified that the neighborhood in which he arrested Erskine has "a high incidence of drugs and drug usage." Chapman testified that the amount of rocks Erskine had was more than a "typical user" would have and that the manner of their packaging indicated that they were "packaged for delivery."

**6.** Because of these omitted definitions and because of the failure to instruct the jury regarding the offense alleged in the indictment, the charge was erroneous. *See Ester v.*

*State,* 151 S.W.3d 660, 664 (Tex.App.-Waco 2004, no pet.). However, Erskine does not complain about these errors in his brief.

Chapman recovered a large amount of cash from the glove compartment of the car and noted that Erskine had been smoking marihuana.

Conversely, Erskine's girlfriend Duty testified that the cash was hers. However, her testimony did not otherwise controvert the State's evidence on the issue of intent.

The evidence here is similar to that presented in *Jordan v. State*, 139 S.W.3d 723 (Tex.App.-Fort Worth 2004, no pet.). There,

> appellant was arrested in a high crime area where drug houses were located. While he did not possess any drug paraphernalia indicating an intent to sell, he also did not possess any indicating an intent to use. Two officers testified that the packaging of the drugs, in capsule form and in individual bags, indicated an intent to sell. Appellant possessed three different kinds of drugs. Finally, an experienced narcotics officer testified that the amount of drugs possessed by appellant indicated an intent to sell.

*Id.* at 726–27. Under these facts, the Fort Worth Court found the evidence legally and factually sufficient to prove the appellant possessed the substance at issue with an intent to deliver. *See id.*

Although Duty claimed ownership of the cash, the jury was free to disregard her testimony. *See Goodman v. State*, 66 S.W.3d 283, 287 (Tex.Crim.App.2001); *Parker v. State*, 119 S.W.3d 350, 355 (Tex. App.-Waco 2003, pet. ref'd). Therefore, we cannot say that the evidence supporting the verdict is "too weak to support the finding of guilt beyond a reasonable doubt" or that Duty's testimony is so strong "that the beyond-a-reasonable-doubt standard could not have been met." *See Zuniga*, 144 S.W.3d at 484–85. Accordingly, the evidence is factually sufficient to prove that Erskine possessed the cocaine with an intent to deliver it. Thus, we overrule the remainder of Erskine's second point.

We affirm the judgment.