

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00309-CR
### No. 10-07-00310-CR

**KELVIN KIANTA BROOKS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court Nos. 2007-844-C1 and 2007-845-C1

## MEMORANDUM  OPINION

In cause number 10-07-00309-CR, a jury convicted Kelvin Kianta Brooks of possession of cocaine with intent to deliver and sentenced him to twenty-five years in prison.  In two points of error, he challenges the legal and factual sufficiency of the evidence to support this conviction.  In cause number 10-07-00310-CR, the jury convicted Brooks of possession of ecstasy and sentenced him to ten years in prison.  In a single point, he challenges the factual sufficiency of the evidence to support this conviction.  We affirm in part and reverse and remand in part.

**FACTUAL BACKGROUND**

Officers Rondell Blatche and Robert Bruce were dispatched to investigate a claim that an African-American male wearing a red and white baseball jersey was in a bar with a handgun. Upon entering the bar, the officers observed Brooks, who matched this description. The officers approached Brooks and asked him to accompany them outside. Brooks asked if the officers were talking to him and Bruce replied, "Yes." According to Blatche, Brooks stated that he was not going anywhere with "you m----- f------." The officers drew closer and Bruce attempted to grab Brooks's arm. Brooks jerked his arm away and began running, digging in his pockets and waist area. Blatche saw Brooks throw two clear plastic bags towards a pool table. Bruce also saw Brooks throw something. No one other than Brooks was in the vicinity where the items were thrown.

Still fearing that Brooks possessed a weapon, the officers ordered Brooks to show his hands. When Brooks failed to comply, the officers drew their tasers. Bruce deployed his taser and struck Brooks in the leg. Brooks was eventually restrained. He was in possession of a cell phone and a few dollars.

Blatche located a bag of marihuana under the pool table. Bruce located a bag of crack cocaine and ecstasy pills in the ball return. The officers did not find any drug paraphernalia. Brooks did not appear to be under the influence of narcotics. The officers never located a gun.

Brooks testified that the officers arrived as he was racking the pool balls in preparation of playing a second game of pool with Brian Robinson. The officer was pointing and telling him to approach. Because Robinson was standing behind him,

Brooks asked, "You mean me?" He denied using any fowl language. He also denied being so close to the officers that Bruce could grab his arm. He panicked when the officers drew their tasers, began running, dropped a pool stick that he had been holding, and began digging in his pants to retrieve the bag of marihuana, which he intended to discard. He claimed that he was tased on his hand, leg, and arm. During Brooks's arrest, Blatche grabbed the arm that had been tased.

Robinson testified that when the officers entered the bar, their hands were on their tasers and they said, "You in the red and white, come here." Because he was wearing red and white, Robinson approached. The officers responded, "No, not you. Kelvin." Robinson noticed that Brooks acted as though he had a previous run-in with the officers and seemed nervous and scared. Robinson saw Brooks throw the marihuana, but not the cocaine. Neither did he see Brooks in possession of cocaine. He testified that Brooks was tasered twice and fell in a different location than where the officers testified that he fell.

Forensic scientist Lindsay Kaltwasser testified that the bag of cocaine held 4.72 grams. Allen Thompson, a drug enforcement unit investigator, testified that the bag held two large rocks, one small rock, and crumbs. According to Thompson, dealers usually carry more than two rocks, a gram or more indicates a dealer, and 4.72 grams is a dealer amount. The cocaine was worth $470 and could be cut into 23 to 24 rocks, using a thumbnail or sharp object. It is common for a dealer to break off a piece of a large rock and sell that piece. A dealer may carry his entire "stash" on his person. He testified that ecstasy, or methamphetamine, is worth approximately $10 to $20 per pill.

Thompson testified that there is no such thing as a "typical" user. Addictive individuals will use the product as quickly as it can be obtained, while others use it recreationally. However, a crack cocaine user is doing good to have more than 1 or 2 rocks because a user does not save the crack, but smokes it as soon as possible. He rarely encounters users in possession of more than one or two rocks. While users carry a crack pipe or other heating element, dealers do not usually carry such items because they do not use their own product. He testified that a pool table pocket would be a good place to hide or sell drugs.

Thompson identified other ways to determine whether a person is a dealer: (1) possession of five, ten, or twenty dollar bills; (2) names in the person's cell phone; (3) possession of a receipt or other document identifying who owes what; (4) possession of a weapon; or (5) others in the area observed the person trying to sell drugs. These factors were not present in Brooks's case. Thompson also admitted that a person in possession of 4.72 grams could have purchased the drugs for friends or could be using it over a period of days.

Brooks denied possessing the bag of cocaine and did not know how the bag came to be in the ball return. Blatche, however, was positive that he saw Brooks throw two bags, confirmed by the fact that he recovered two bags. According to Blatche, Bruce, and Robinson, Brooks was the only person in the area of the pool table where the drugs were found.

Brooks admitted that he has two previous convictions for possession of cocaine and a previous conviction for possession with intent to deliver cocaine. He also

admitted that the bags of cocaine and marihuana were both tied and packaged in the same manner.

## STANDARDS OF REVIEW

Under legal sufficiency review, we determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). We do not resolve any conflict of fact or assign credibility to the witnesses, as this was the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Inconsistencies in the evidence are resolved in favor of the verdict. *Curry*, 30 S.W.3d at 406; *Matson*, 819 S.W.2d at 843.

Under factual sufficiency review, we ask whether a neutral review of all the evidence demonstrates that the proof of guilt is so weak or that conflicting evidence is so strong as to render the jury's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We review the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Johnson*, 23 S.W.3d at 7. We do not indulge in inferences or confine our view to evidence favoring one side. Rather, we look at all the evidence on both sides and then make a predominantly intuitive judgment. *Id.*

**INTENT TO DELIVER**

Intent to deliver may be established by circumstantial evidence. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). A number of factors are relevant to this issue: (1) the nature of the location where the defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) the manner of packaging of the drugs; (4) the presence or absence of drug paraphernalia (for use or sale); (5) whether the defendant possessed a large amount of cash in addition to the drugs; and (6) the defendant's status as a drug user. *Erskine v. State*, 191 S.W.3d 374, 380 (Tex. App.—Waco 2006, no pet.). Expert testimony may also be used to establish intent. *See id*. The "number of factors present is not as important as the logical force the factors have in establishing the elements of the offense." *Moreno*, 195 S.W.3d at 326.

**Analysis**

In reliance on *United States v. Skipper*, 74 F.3d 608 (5th Cir. 1996) and *United States v. Hunt*, 129 F.3d 739 (5th Cir. 1997), Brooks contends that the only evidence of intent arises out of the amount of cocaine found at the scene, an amount that is consistent with personal use and that, standing alone, cannot establish intent.

In *Skipper*, the defendant was in possession of 2.89 grams of crack cocaine and a razor. *See Skipper*, 74 F.3d at 610. The State introduced evidence that Skipper had previously been convicted of possession of a controlled substance. *Id*. Testimony established that 2.89 grams suggests dealing and the razor could be used to cut the cocaine for personal use. *Id*. at 611. The Fifth Circuit held that 2.89 grams "is not clearly inconsistent with personal use" and "alone is insufficient to prove intent." *Id*.

"Additional evidence is necessary." *Id*. The razor did not constitute additional evidence because it could be consistent with both distribution and personal use. *See id*.

In *Hunt*, police located a brown paper bag containing marihuana, loose tobacco and cigar labels, a loaded handgun, 7.998 grams of crack cocaine, and a razor blade in Hunt's home. *See Hunt*, 129 F.3d at 741. Detective Ruben Rodriguez testified that the cocaine was worth $200, possibly more, and was a distributable amount, but an addict could smoke $500 worth in one day. *Id*. He further testified that a razor is used to cut cocaine for either distribution or personal use, the absence of crack pipes at the home indicated that no users resided there, and the tobacco and cigar wrappings were evidence of "primos," which are used to smoke cocaine. *Id*. Marihuana and cocaine were sold in the area. *Id*. A forensic drug analyst testified that he usually tests rocks smaller than the ones found at Hunt's home. *Id*.

Hunt admitted using the marihuana, but denied using cocaine, knowing about the cocaine, or selling drugs. *Id*. She admitted owning the gun, but not the tobacco. *Id*. She had given a key to another individual who was living in the house and that person had obtained the marijuana. *Id*. Hunt's neighbor had never observed Hunt use or deal cocaine. *Id*.

The Fifth Circuit held that the evidence failed to "provide[] a sound basis for inferring that Hunt intended to distribute the cocaine." *Id*. at 743. The amount, razor, and "primos" were all consistent with personal use, a user could smoke more cocaine in a single day than the amount found in Hunt's home, and the State conceded during oral argument that the amount alone is insufficient to support an inference of intent. *See id*.

In Texas, a large quantity of drugs alone can be sufficient evidence of intent where accompanied by expert testimony. *See Pitts v. State*, 731 S.W.2d 687, 691-92 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (1,025 grams of cocaine); *see also Morrow v. State*, 757 S.W.2d 484, 487-88 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (3,013 grams of cocaine); *Guerrero v. State*, No. 08-04-00177-CR, 2005 Tex. App. Lexis 8658, at *6-10 (Tex. App.—El Paso Oct. 20, 2005, no pet.) (not designated for publication) (2,000 grams of cocaine); *Malvais v. State*, No. 05-98-00873-CR, 2000 Tex. App. Lexis 2487, at *6-12 (Tex. App.—Dallas Apr. 14, 2000, no pet.) (not designated for publication) (997 grams of cocaine). The converse would be that a small quantity of drugs is not alone sufficient to establish intent. Thus, we agree with *Skipper* and *Hunt* that the quantity of drugs alone cannot establish intent if it is consistent with personal use, unless supported by additional evidence.

Here, the quantity of cocaine totals 4.72 grams. Thompson testified that this is a dealer amount, but admitted that it could also be consistent with personal use. Standing alone, 4.72 grams is insufficient evidence of intent; additional evidence is required. *See Skipper*, 74 F.3d at 611.

The State argues that additional evidence exists for several reasons: (1) both the bag of marihuana and the bag of cocaine were packaged in the same manner; (2) Brooks was not in possession of any drug paraphernalia for either use or sale; (3) Thompson testified that users typically carry some type of heating element, such as a crack pipe, but dealers do not; (4) at the time of his arrest, Brooks was not under the influence of a narcotic; (5) Brooks has a previous conviction for possession with intent to deliver; (6)

Brooks attempted to evade capture and discarded contraband in the process; and (7) Brooks was found in possession of three different types of drugs. Brooks responds that there were no reports of drug activity or conduct consistent with drug activity and he was not found in possession of large amounts of money, paraphernalia, packaging materials, cutting materials, receipts, ledgers, or weapons.

Viewing the evidence in the light most favorable to the verdict, the evidence is legally sufficient to establish possession with intent to deliver. However, viewing the evidence in a neutral light, it is not factually sufficient. The record does not reflect that Brooks was arrested in a high crime or high drug area, the drugs were packaged in such a way to suggest that Brooks is a dealer, Brooks was in possession of any drug paraphernalia for the purpose of dealing, or Brooks possessed a large amount of cash. *See Hillman v. State*, No. 02-03-171-CR, 2004 Tex. App. Lexis 3210, at *10-11 (Tex. App.— Fort Worth Apr. 8, 2004, pet. ref'd) (not designated for publication).[1] That he fled or discarded contraband certainly evidences a guilty conscience, but such guilt is just as consistent with possession as with intent to deliver.

---

[1]     Hillman possessed 7.5 grams of methamphetamine, 70 "hits" worth $700, which was found hidden under the console of his vehicle. *Hillman v. State*, No. 02-03-171-CR, 2004 Tex. App. Lexis 3210, at *9 (Tex. App.—Fort Worth Apr. 8, 2004, pet. ref'd) (not designated for publication). An expert testified that it is unusual for a user to carry this amount of methamphetamine, dealers commonly make alterations to their vehicles to hide drugs, and users usually carry drugs on their person. *See id*. The Fort Worth Court found the evidence legally, but not factually, sufficient because there existed no evidence of any other circumstances tending to prove intent, such as "evidence that Hillman possessed an excessive amount of cash; that the drugs were packaged in a manner indicating intent to sell; that Hillman possessed any baggies, scales, or other items used in sales or transactions involving drugs; that Hillman was arrested in an area known for drug sales; that Hillman had any weapons in the car; or that Hillman tried to evade the police." *Id*. at *10-11.

Accordingly, we find the proof of guilt to be so weak as to render the jury's verdict clearly wrong and manifestly unjust. *See Watson*, 204 S.W.3d at 414-15; *see also Johnson*, 23 S.W.3d at 11. We overrule Brooks's first point of error, but sustain his second point of error in cause number 10-07-00309-CR.

## POSSESSION OF ECSTASY

A defendant commits unlawful possession of a controlled substance where he: (1) exercised control, management, or care over the substance; and (2) knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). When the defendant is not in exclusive possession or control of the place where contraband is found, the State must affirmatively link the defendant with the contraband. *See id*. at 406.

The Court of Criminal Appeals has recently provided the following explanation for the "so-called 'affirmative links' rule":

> [I]n a possession of a controlled substance prosecution, "the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. This is the so-called "affirmative links" rule which protects the innocent bystander—a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to someone else's drugs. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (*e.g.*, "links"), may well be sufficient to establish that element beyond a reasonable doubt. It is, as the court of appeals correctly noted, not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial.

*Evans v. State*, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006) (quoting *Evans v. State*, 185 S.W.3d 30, 34 (Tex. App.—San Antonio 2005)) (footnotes omitted). The Court cautioned against use of the term "affirmative links" as suggesting "an independent test of legal sufficiency" and chose instead to use only the term "'link' so that it is clear that evidence of drug possession is judged by the same standard as all other evidence." *Id.* at 161 n.9.

Thus, we examine the record for direct or circumstantial evidence which, when viewed in the light most favorable to the verdict, established that Brooks exercised control, management, or care over the contraband and knew that it was contraband. *See id.* at 161-62.

Several facts lead us to conclude that the evidence is factually sufficient to support Brooks's conviction for possession of ecstasy. Brooks attempted flight and was observed making gestures that indicated the disposal of contraband. The ecstasy was found inside the ball return of the pool table near where Brooks was arrested; he was in close proximity to where the drugs were recovered and the drugs were accessible to him. Other contraband was also found at the scene. Brooks admitted owning the marihuana.

Regardless of these facts, Brooks urges that the evidence is factually insufficient because: (1) he denied possessing the ecstasy; (2) Robinson did not see Brooks possess or throw the ecstasy; (3) the bag of ecstasy and the bag of marihuana were found in different locations; (4) the ecstasy would have to be thrown directly into the ball return and could not land there by chance when Brooks was running from the officers; (5) the

ball return is not an unusual place to hide drugs; (6) we cannot know how far into the ball return the bag landed because the record contains no photograph showing the bag's location inside the ball return; and (7) only Blatche saw Brooks throw two bags.

However, as the sole judge of the weight and credibility of the evidence, the jury bore the burden of determining whether the bag was capable of landing in the ball return and whether to believe Brooks and Robinson or Blatche. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) ("Because the jury is the sole judge of a witness's credibility, and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony"). Citing *Reina v. State*, 940 S.W.2d 770 (Tex. App.—Austin 1997, pet. ref'd) and *Lancon v. State*, 220 S.W.3d 57 (Tex. App.—San Antonio 2006), Brooks suggests that we may ignore the jury's determinations where overwhelming evidence indicates that they are clearly wrong. Yet, *Reina* was decided before the Court of Criminal Appeals' decision in *Watson*, which reformulated the factual sufficiency standard of review. *See Watson*, 204 S.W.3d at 414-15. As for *Lancon*, the Court of Criminal Appeals recently reversed that decision, holding that the San Antonio Court incorrectly applied *Watson* by failing to defer to the jury's verdict where the "case was largely based on a determination of the credibility of the witnesses." *Lancon*, 253 S.W.3d at 706-07.

The jury was free to resolve any conflicts or inconsistencies in the evidence either for or against Brooks. *See id.* at 707. In doing so, it could reasonably conclude that Brooks was in possession of the ecstasy the officers recovered from the ball return. The proof of guilt is not so weak nor the conflicting evidence so strong as to render the

jury's verdict clearly wrong and manifestly unjust.  *See Watson*, 204 S.W.3d at 414-15; *see also Johnson*, 23 S.W.3d at 11.  Because the evidence is factually sufficient to support such a conclusion, we overrule Brooks's sole point of error in cause number 10-07-00310-CR.

**CONCLUSION**

We reverse Brooks's conviction in cause number 10-07-00309-CR for possession of a controlled substance with intent to deliver and remand that cause to the trial court for further proceedings consistent with this opinion.  We affirm the judgment in cause number 10-07-00310-CR.

FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Vance, and
    Justice Reyna
    (Chief Justice Gray concurring and dissenting with a note)*
Judgment reversed and remanded in cause number 10-07-00309-CR,
Judgment affirmed in cause number 10-07-00310-CR,
Opinion delivered and filed October 1, 2008
Do not publish
[CRPM]

*    (Note by Chief Justice Gray: "Chief Justice Gray dissents from the reversal of Brooks's conviction for possession of cocaine with the intent to deliver in cause number 10-07-00309-CR.  A separate opinion will not issue.  He notes, however, that there is more evidence of intent to deliver than merely the amount of cocaine.  An expert opined based upon all the facts and circumstances, including that Brooks was in possession of three different types of drugs in a public place, that Brooks was in possession with the intent to deliver.  He further notes that, in his opinion, the Court has failed to comply with the requirement expressed in *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997), to detail the evidence and clearly state why the evidence that is legally sufficient is nevertheless factually insufficient.")