*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# MEMORANDUM OPINION

No. 04-10-00675-CR

Jesus **HERRERA-OBREGO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CR-0135A
Honorable Sharon MacRae, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:       Karen Angelini, Justice
              Steven C. Hilbig, Justice
              Marialyn Barnard, Justice

Delivered and Filed:  July 20, 2011

AFFIRMED

Jesus Herrera-Obrego was convicted of possession with intent to deliver cocaine in an amount of more than 400 grams. In a single issue on appeal, Herrera-Obrego asserts the evidence is legally insufficient to support his conviction either as a principal or as a party. We hold the evidence is sufficient to support Herrera-Obrego's guilt to the offense and affirm the trial court's judgment.

**BACKGROUND**

On the morning of September 16, 2009, Herrera-Obrego and Guadalupe Mosqueda-Aguirre drove into Laredo, Texas from Monterrey, Mexico. Unbeknownst to them, a description of their vehicle (a white Volkswagen bearing Mexico license plates, with male and female occupants) and information that the car had a compartment with drugs inside had been passed to American law enforcement. Officer Wayne Morgan, a police officer in Natalia, Texas who works with the High Intensity Drug Trafficking Administration ("HIDTA"), stopped a car matching the description of the Volkswagen in a routine traffic stop because the female occupant (Mosqueda-Aguirre) was not wearing a seat belt. Mosqueda-Aguirre told the police officer that she and Herrera-Obrego were friends and they were on their way to a flea market in San Antonio. Herrera-Obrego told Officer Morgan the car belonged to his wife, but he told another officer the car belonged to a friend of Mosqueda-Aguirre.[1] He also said he and Mosqueda-Aguirre were going to the flea market and then returning to Monterrey later that same day.

Officer Morgan, who thought it was unusual for two people to drive ten hours just to go shopping, asked for consent to search the car, which Herrera-Obrego granted. Officer Morgan discovered the seat belts had been removed and replaced based on scratches he saw on the nuts attaching the belts to the floorboard. He also noticed that the screws on the console between the two front bucket seats had been tampered with, although the car was relatively new with only 6,000 miles on the odometer. The underside of the vehicle indicated the gear shaft had been pulled forward and the tailpipe relocated. All these modifications led Officer Morgan to conclude the vehicle had a hidden compartment, but he could not find a trap door. He testified that most people who drive the vehicles used to transport controlled substances do not always

---

[1] The car was registered to Marie Esther Carrizales-Alonso of Guadalupe, Nuevo Leon, Mexico. Mosqueda-Aguirre is also from Guadalupe. Herrera-Obrego's home address is in Monterrey, Nuevo Leon, Mexico.

know what they are being paid to transport, but they do know there is a compartment in the car that contains a controlled substance. In his experience, the driver is told to drive to San Antonio, park the car for a few hours, and then drive back with money. After Officer Morgan completed his search, he contacted HIDTA, which had surveillance officers in place to follow the car. Officer Morgan released the car, and the entire stop lasted about fifteen to twenty-five minutes.

After Officer Morgan released the car, John Dyar, a police officer in San Antonio, Texas who also works with HIDTA, followed the car from Natalia into Bexar County. Although surveillance officers momentarily lost sight of the car, they made visual contact again when they saw the car parked in an HEB Store parking lot, closer to the access road than to the store. Officer Dyar watched as a man and woman got out of the Volkswagen and walked into the HEB. Officer Dyar then saw a black Nissan drive into the lot. A Hispanic man got out of the Nissan and walked around the lot, looking in the direction of the Volkswagen. He then walked to the HEB where he met with Herrera-Obrego and Mosqueda-Aguirre. According to Officer Dyar, the meeting was brief and nothing was exchanged. Officer Dyar believed the man who drove the Nissan may have seen the HIDTA surveillance officers and decided not to drive away in the Volkswagen. Officer Dyar explained it is common practice for drivers to leave vehicles in a busy parking lot and wait for someone to get the car and drive it to another location to unload the contraband. He testified the drivers are usually aware the vehicle is loaded with narcotics. Soon after the man left in the Nissan, Herrera-Obrego and Mosqueda-Aguirre left the HEB parking lot. The HIDTA surveillance officers followed.

Gerald Fuller, a San Antonio police officer, received a message from HIDTA asking him to assist in a stop of the Volkswagen as it left San Antonio. When he saw the car slow its speed to below the posted freeway speed limit, he pulled it over for impeding traffic. Herrera-Obrego

explained he was having trouble with the vehicle's cruise control, which caused him to slow the car. Herrera-Obrego again consented to a search of the car. He also consented to a canine scent-search.

Garland Gaston, a canine officer with the Leon Valley Police Department assigned to HIDTA as a dog handler, and his dog conducted the scent-search. The dog alerted to the scent of drugs and led the officers to the back of the center console inside the car. Officer Gaston smelled fabric softener, which he explained was often used to mask the odor of drugs. He said that, in his experience, the driver will park the car, leave the keys in the car, and walk to a business for an hour or two. The car will then be driven away by another person. After the drugs are removed from the car, it may be returned to the parking lot where it is driven away by the original driver. Officer Gaston also noticed tool marks on the bolts, which indicated the car had been modified. Herrera-Obrego told the officers the car had not been "worked on." After the car seat was removed, Officer Gaston noticed the screws holding the console in place were loose. The officers found a compartment under the console, inside of which ten "bricks" of cocaine were found.[2] At least two of the "bricks" were stamped with the image of a tarantula. Detergent or fabric softener was layered inside the plastic that wrapped each "brick." The gross weight of the cocaine was approximately eleven kilograms, with a combined value in San Antonio of approximately $250,000. The officers who saw the hidden compartment all stated it could not have been seen by a casual observer of the car.

Robert Pineda, a special agent with Immigration and Customs Enforcement who is assigned to the HIDTA unit, was at the scene when the cocaine was found. Agent Pineda ascertained that Herrera-Obrego is a Mexican national who was in the United States on a legal

---

[2] The police also recovered $800.00 in cash from Herrera-Obrego; $1,749.00 from Mosqueda-Aguirre; and a purse containing two watches, three cellular telephones, a wallet, two Mexican passports, and four Mexican ID cards.

tourist permit. Agent Pineda testified Herrera-Obrego told him that Mosqueda-Aguirre hired him to drive her to San Antonio and that the cocaine belonged to her. Herrera-Obrego also told the agent, "I know there's something but she's behind everything." Herrera-Obrego did not act surprised when the cocaine was discovered inside the car. The law enforcement officers described Herrera-Obrego as calm, quiet, and cooperative during the two searches of the car. Agent Pineda testified that Herrera-Obrego and Mosqueda-Aguirre together legally crossed the United States/Mexico border twelve times beginning in 2007. Their most recent crossing prior to September 16, 2009 was in a different vehicle on August 1, 2009. Agent Pineda thought it suspicious that they would drive into Texas twice in the same month but in two different vehicles. On September 16, they crossed the border into Laredo at 5:28 a.m., leaving Monterrey at approximately 2:00 a.m. In addition to her twelve trips with Herrera-Obrego, Mosqueda-Aguirre entered the United States sixteen times during the same time period.

The only witness called by the defense at trial, Rebecca Reed, testified she viewed the Volkswagen after it was impounded, and she did not believe a casual observer would have realized there was something beneath the console prior to its removal.

### STANDARD OF REVIEW

In a sufficiency challenge to the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the charged offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899, 912 (Tex. Crim. App. 2010). We defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* at 899. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to

establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The standard of review is the same for cases relying on either direct or circumstantial evidence. *Id.* "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of the incriminating circumstances is sufficient to support the conviction." *Id.* Because Herrera-Obrego was charged as both a principal and a party to the offense, we will review the evidence to determine whether it is legally sufficient under either theory. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) ("[W]hen the trial court's charge authorizes the jury to convict on more than one theory, as it did in this case, the verdict of guilty will be upheld if the evidence is sufficient on any one of the theories.").

### DISCUSSION

Herrera-Obrego argues no rational trier of fact could have found he knew there was contraband in the Volkswagen.[3] We disagree. In this case, a reasonable jury could infer Herrera-Obrego exercised care, custody, and control over the cocaine found in the vehicle he drove. Witnesses testified there was a strong odor in the car resulting from the fabric softeners used to mask the odor of the drugs. Although the police admitted the alterations to the vehicle were not readily apparent, the odor certainly was. Herrera-Obrego lied to the police about the purpose of the trip and his intended destination. The couple never went to the flea market and did not appear to make any purchases at any location. A defendant's false statements are some evidence of guilt. *See Ates v. State*, 21 S.W.3d 384, 390 (Tex. App.—Tyler 2000, no pet.) (appellate court considered false statements made by defendant in considering sufficiency of evidence); *Loserth v. State*, 985 S.W.2d 536, 541-42 (Tex. App.—San Antonio 1998, pet. ref'd)

---

[3] To convict Herrera-Obrego as a principal, the State was required to prove: (1) he exercised actual care, control and management over a controlled substance in the amount alleged; (2) he intended to deliver the controlled substance to another; and (3) he knew the substance in his possession was contraband. See *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *Erskine v. State*, 191 S.W.3d 374, 379 (Tex. App.—Waco 2006, no pet.)

(same).   Finally, Herrera-Obrego admitted "I know there's something but she's behind everything" in an attempt to deflect his involvement.   Given the circumstances of this statement, a reasonable jury could infer that Herrera-Obrego knew the "something" was cocaine.

## CONCLUSION

Viewing the evidence in the light most favorable to the jury's verdict, and deferring to the jury's apparent credibility determinations, the evidence is sufficient to permit a rational jury to find the essential elements of the offense beyond a reasonable doubt and to convict Herrera-Obrego as a principal.   The judgment of the trial court is affirmed.

Steven C. Hilbig, Justice

Do not publish