271 S.W.3d 773 (2008)
Ronald Lamont GUYTON, Appellant,
v.
The STATE of Texas, Appellee.
No. 10-07-00070-CR.
Court of Appeals of Texas, Waco.
November 5, 2008.
*774 Lane D. Thibodeaux, Law Office of Lane D. Thibodeaux, Bryan, for appellant.
Bill R. Turner, Brazos County Dist. Atty., Bryan, for appellee.
Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

OPINION
BILL VANCE, Justice.
A jury convicted Ronald Guyton of three counts of possession of a controlled substance with intent to deliver and assessed punishment at fifty years' confinement for count one, two years' confinement for count two, and fifty years' confinement for count three. In his pro se supplemental brief Guyton attacks his conviction claiming that the evidence was legally and factually insufficient to prove possession with intent to deliver. Additionally, Guyton complains that the trial court erred when it failed to (1) inquire into a conflict of interest between him and his attorney and (2) give him adequate notice of the introduction of his penitentiary packet for enhancement purposes. Finding the evidence factually insufficient to support Guyton's conviction, we will reverse and remand for a new trial.

Background
On the evening of April 26, 2006, Officers Steve Spillars and Paul Mahoney, attempted to stop a white Pontiac that was allegedly operating with a defective headlight.[1] The Pontiac did not immediately pull over but continued to travel east on Highway 21 in Bryan until it turned onto Waco Street. Spillars testified that, as the Pontiac began to stop, he started to get out of his vehicle because he saw the back door of the Pontiac begin to open. Guyton, who was wearing a black baseball cap, ran out of the back door of the Pontiac and was chased by Spillars. During the chase, Spillars saw Guyton throw a small object from his right hand as he continued to chase Guyton into a creek.
When Guyton was arrested, he initially falsely identified himself as Christopher Brice Daniels. Mahoney then ran Guyton's fingerprints through the FBI and DPS databases under the name Christopher Daniels. However, when Mahoney took Guyton the fingerprint cards to sign, he signed his name as Ronald Guyton. Subsequent investigation confirmed that Guyton was Ronald Guyton and not Christopher Daniels. When the officers searched Guyton, he was not carrying any contraband and he did not appear to be under the influence of narcotics.
Spillars searched the area and located a black baseball cap, a food-coloring bottle, and two plastic sandwich bags that had been tied together. The contents of the sandwich bags and the food-coloring bottle were later tested and weighed, and forensic scientist Joel Budge testified that the bags contained .40 grams of cocaine and 3.57 grams of ecstasy. The food-coloring bottle contained 5.15 grams of PCP.
*775 Officer Spillars testified that usually possession of less than a gram of cocaine would be charged as possession only. He also testified that when he initially arrested Guyton he was booked on possession and not possession with intent to deliver.
Detective Robert Wilson, College Station Police Department, testified that street-level drug dealers normally carry enough drugs for only a few sales. Furthermore, a street-level drug dealer normally would not document his drug sales on a narcotics ledger, as they typically operate on a hand-to-hand basis. Street level dealers carry a low amount of product in order to be able to quickly eat, drop, or destroy evidence if stopped by law enforcement. He also testified to the perceived effects of each of the individual drugs Guyton possessed, and stated that a typical drug user would not collectively consume, cocaine, ecstasy, and PCP because the drugs would counteract the effects of each other. In his opinion, the drugs possessed by Guyton were for sale and not personal use.
After a jury convicted Guyton on all three counts of possession with intent to deliver, he filed a motion for new trial claiming that he did not receive effective assistance of counsel or adequate notice of the reindictment.[2] A hearing was held, the trial court denied the motion, and this appeal followed.

Pro Se Pleadings
As an initial matter, we must address Guyton's status as a pro se litigant before this court. Both Guyton and his appointed appellate counsel have filed briefing in this matter. A criminal appellant has no right to hybrid representation. Ex parte Taylor, 36 S.W.3d 883, 887 (Tex. Crim.App.2001); Meyer v. State, 27 S.W.3d 644, 648 (Tex.App.-Waco 2000, pet. ref'd). Generally, when an appellant has counsel and counsel has filed a brief, the appellant has no right to file a pro se brief. However, the prohibition on hybrid representation is not absolute. See e.g., Warren v. State, 98 S.W.3d 739, 741 (Tex.App.-Waco 2003, pet. ref'd). We may consider a pro se brief if the interests of justice require us to do so. We have reviewed Guyton's pro se supplemental brief and find that the interests of justice require that we address his issues. See Williams v. State, 946 S.W.2d 886, 892 (Tex.App.-Waco 1997, no pet.) (appellate court may consider pro se issue in the interest of justice even though appellant has no right to hybrid representation).

Intent to Deliver
In his first issue, Guyton challenges the legal and factual sufficiency of the evidence to support a finding of intent to deliver. The standard of review for legal and factual sufficiency is well settled. When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of *776 the evidence admitted at trial in the light most favorable to the verdict. Adelman v. State, 828 S.W.2d 418, 422 (Tex.Crim.App. 1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex.Crim.App.2000).
In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.App.2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." Johnson, 23 S.W.3d at 7 (quoting Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App.1996)). The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment...." Id. (quoting William Powers and Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Texas L.Rev. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination. Watson, 204 S.W.3d at 416-17.
Intent to deliver may be established by circumstantial evidence. Moreno v. State, 195 S.W.3d 321, 325 (Tex.App.-Houston [14th Dist.] 2006, pet. ref'd). A number of factors are relevant to this issue: (1) the nature of the location where the defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) the manner of packaging of the drugs; (4) the presence or absence of drug paraphernalia (for use or sale); (5) whether the defendant possessed a large amount of cash in addition to the drugs; and (6) the defendant's status as a drug user. Erskine v. State, 191 S.W.3d 374, 380 (Tex. App.-Waco 2006, no pet.). Expert testimony may also be used to establish intent. See id. The "number of factors present is not as important as the logical force the factors have in establishing the elements of the offense." Moreno, 195 S.W.3d at 326.
Using these, Guyton argues that the location of his arrest was not an inherently suspicious place; that the amount of drugs in his possession is not sufficient to support a finding of intent to deliver; that there was an absence of paraphernalia; that the substances were packaged together; that his previous conviction for just possession is consistent with the status of a user, and that he was not carrying any cash or contraband when he was arrested.
The State correctly says that not all the quoted factors must be present. It says the evidence is legally and factually sufficient because (1) of the variety of drugs Guyton possessed; (2) the quantity and street value of the drugs were more consistent with a dealer than a user, (3) the lack of paraphernalia to ingest the substance; and (4) he fled and discarded contraband when he was approached by officers. The State also points to Officer Wilson's testimony that a common drug user would not possess these different types of drugs. According to Wilson, a typical drug user would not collectively consume ecstasy, cocaine, and PCP because the effects of the individual drugs would counteract each other. In his opinion, the variety of drugs in Guyton's possession *777 indicated that they were possessed for sale.
Although a large amount of drugs, often accompanied by police officer/expert witness testimony, can show intent to deliver, such as over a thousand grams of cocaine, or twenty-three thousand narcotic capsules, such amounts are not involved here. See Pitts v. State, 731 S.W.2d 687, 691-92 (Tex.App.-Houston [1st Dist.] 1987, pet. ref'd) (1,025 grams of cocaine); see also Morrow v. State, 757 S.W.2d 484, 487-88 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd) (3,013 grams of cocaine); Guerrero v. State, No. 08-04-00177-CR, 2005 WL 2671251, at *2-4, 2005 Tex.App. Lexis 8658, at *6-10 (Tex.App.-El Paso Oct. 20, 2005, no pet.) (not designated for publication) (2,000 grams of cocaine); Malvais v. State, No. 05-98-00873-CR, 2000 WL 378101, at *2-5, 2000 Tex.App. Lexis 2487, at *6-12 (Tex.App.-Dallas Apr. 14, 2000, no pet.) (not designated for publication) (997 grams of cocaine). The converse would be that a small quantity of drugs is not alone sufficient to establish intent. Thus, the quantity of drugs alone cannot establish intent if it is consistent with personal use, unless supported by additional evidence. See Brooks v. State, No. 10-07-00309-CR, 2008 WL 4427266, at *4-5, 2008 Tex.App. Lexis 7364, at *11-14 (Tex.App.-Waco Oct. 1, 2008, no pet. h.) (not designated for publication).[3]
Here, the quantity of drugs possessed by Guyton totaled 5.15 grams of PCP (approximately 20 hits), 3.57 gram of ecstasy (approximately 7 tablets), and .40 grams of cocaine (approximately 1 or 2 rocks). Spillars and Wilson testified that this quantity was consistent with a street dealer amount, but Spillars admitted that it could also be consistent with personal use. Standing alone, these amounts are insufficient evidence of intent; additional evidence is required. See Moreno, 195 S.W.3d at 326.
The State argues that additional evidence exists for several reasons: (1) Guyton identified himself as someone else; (2) Guyton was not in possession of any drug paraphernalia for either use or sale; (3) at the time of his arrest, Guyton was not under the influence of a narcotic; (4) Guyton attempted to evade capture and discarded contraband in the process; and (5) Guyton was found in possession of three different types of drugs. Guyton responds that there were no reports of drug activity or conduct consistent with drug activity where he was arrested and he was not found in possession of large amounts of money, paraphernalia, packaging materials, cutting materials, receipts, ledgers, a cell phone, or weapons.
Possession of a controlled substance with intent to deliver is a delivery offense. See TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2003). Delivery offenses contain an additional mens rea, the specific intent to deliver. Id. It is true *778 that specific intent can be inferred from circumstantial evidence and a defendant's conduct. Maldonado v. State, 998 S.W.2d 239, 243 (Tex.Crim.App.1999). However, the Texas Court of Criminal Appeals defines circumstantial evidence as "direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven." Taylor v. State, 684 S.W.2d 682, 684 (Tex.Crim.App.1984) (emphasis added). Wilson's testimony is not direct proof of any facts concerning Guyton or the offense. It is direct proof, at most, that in Wilson's experience, persons possessing the amount and variety of drugs possessed by Guyton were dealers, not users.
There is no evidence that Guyton possessed any small baggies for packaging small amounts of contraband, or that he was doing anything to exhibit an intent to deliver. There is no evidence that he had set himself up in a drug house or on a street corner where drugs were habitually sold. There is no evidence that he attempted to pass off contraband to another person. Aside from the officer's speculation, the only evidence is that Guyton jumped from a car, dropped a mixed bag of contraband, and gave the officer a fake name. That he fled or discarded contraband and gave a false name certainly evidences a guilty conscience, but such guilt is just as consistent with possession as with intent to deliver. Brooks, 2008 WL 4427266, at *4, 2008 Tex.App. Lexis 7364, at *13.
Viewing the evidence in the light most favorable to the verdict, the evidence is legally sufficient to establish possession with intent to deliver. However, viewing the evidence in a neutral light, as required by the factual sufficiency standard of review, it is not factually sufficient. The record does not reflect that Guyton was arrested in a high crime or high drug area, that the drugs were packaged in such a way to suggest that Guyton is a dealer, that Guyton was in possession of any drug paraphernalia for the purpose of dealing, or that Guyton possessed a large amount of cash. See id. 2008 WL 4427266, at *4, 2008 Tex.App. Lexis 7364, at * 11-14; see also Hillman v. State, No. 02-03-00171-CR, 2004 WL 742716, at *3, 2004 Tex.App. Lexis 3210, at *10-11 (Tex.App.-Fort Worth Apr. 8, 2004, pet. ref'd) (not designated for publication).[4]
Accordingly, we find the proof of guilt to be so weak as to render the jury's verdict clearly wrong and manifestly unjust. See Watson, 204 S.W.3d at 414-15; see also Johnson, 23 S.W.3d at 11. We sustain his first issue.

Enhancement Paragraph
Guyton complains in his third supplemental issue that he did not receive timely notice of the State's intention to enhance his punishment by using a prior *779 possession of a controlled substance conviction. As a result, Guyton claims that he is entitled to reversal on the jury's punishment finding.
This argument was litigated in Guyton's motion for new trial hearing. After hearing all the evidence, the court entered findings of fact supporting the prosecution's assertion that Guyton received constitutionally adequate notice of the State's intent to enhance his sentence using a prior conviction.
A defendant is entitled to notice of any prior convictions the prosecution intends to use as enhancement to the sentence the defendant is facing. Villescas v. State, 189 S.W.3d 290, 294 (Tex.Crim.App. 2006). These prior convictions used as enhancements must be pled in some form, but they need not be pled in the indictment. Brooks v. State, 957 S.W.2d 30, 34 (Tex.Crim.App.1997). Although the notice requirement is constitutional in origin, there is no specific time period for which notice must be provided. Villescas, 189 S.W.3d at 294. "In fact ... when a defendant has no defense to the enhancement allegation and has not suggested the need for a continuance in order to prepare one, notice given at the beginning of the punishment phase satisfies the federal constitution." Id.
In the motion for new trial, Guyton's trial attorney, Marvin Martin, testified that he received the new indictment containing the enhancement paragraph on December 1, 2006, and knew on November 17, 2006, prior to the reindictment, that Guyton's sentence would be enhanced with his prior conviction. After he received the new indictment, Martin informed Guyton that his sentence in the instant case would be enhanced by a prior conviction. Martin also testified that prosecutors informed Guyton on November 17, 2006, that if he did not accept the plea offered that day, the State would reindict him and add the prior conviction as an enhancement.
Also during the motion for new trial, Nathan Dennis testified that Guyton knew that he had been reindicted. However, Guyton complained to Dennis that he had not received a copy of this new indictment. In response, Dennis found a copy of the reindictment, along with a copy of the certificate of service, which did not bear Guyton's signature, and showed them to Guyton. The certificate of service showing Guyton was served with his reindictment was admitted into evidence.
Collectively, this testimony demonstrates that Guyton received adequate notice of the reindictment. Martin demonstrated that Guyton was informed on several occasions prior to trial by both the Prosecutor and his trial counsel that his sentence was going to be enhanced using the prior conviction. Thus, the trial court did not err in finding that Guyton received constitutionally adequate notice. Webb, 232 S.W.3d at 112. We overrule Guyton's third issue.

Conclusion
In view of our disposition of Guyton's first and third issues, we need not address his or his appellate counsel's remaining issues. See TEX.R.APP. P. 47.1. Because we conclude the evidence is factually insufficient to support Guyton's conviction, we reverse the trial court's judgment and remand the cause for a new trial.
Chief Justice GRAY dissents with a note.[*]
NOTES
[1] Christi French, the Pontiac's driver, testified at trial that the headlights on the Pontiac were working properly.
[2] Guyton was originally charged by indictment on July 13, 2006, he was then reindicted on December 14, 2006. The only change in the reindictment was the addition of an enhancement paragraph alleging a prior conviction for possession of a controlled substance. The effect of the enhancement paragraph was to enhance the minimum range of punishment on count one to 15 years to 99 years. Count three was enhanced to a first degree punishment range, and there was no effect of the punishment range on count two.
[3] When police in a bar approached Brooks, he tried to escape and threw two clear plastic bags towards a pool table. Brooks v. State, No. 10-07-00309-CR, 2008 WL 4427266, at *4, 2008 Tex.App. Lexis 7364, at *11-14 (Tex. App.-Waco Oct.1, 2008, no pet. h.) (not designated for publication). The two plastic bags contained cocaine, ecstasy, and marijuana. An expert testified that it is unusual for a user to carry three different types of narcotics. See id. We found the evidence legally, but not factually, sufficient because there existed no evidence of any other circumstances tending to prove intent, such as "evidence that Brooks possessed an excessive amount of cash; that the drugs were packaged in a manner indicating intent to sell; that Brooks possessed paraphernalia used in sales or transactions involving drugs; that Brooks was arrested in an area known for drug sales; that Brooks possessed any weapons." Id. We note that we issued the opinion in Brooks after counsel filed his brief in this appeal.
[4] Hillman possessed 7.5 grams of methamphetamine, 70 "hits" worth $700, which was found hidden under the console of his vehicle. Hillman v. State, No. 02-03-00171-CR, 2004 WL 742716, at *3, 2004 Tex.App. Lexis 3210, at *9 (Tex.App.-Fort Worth Apr. 8, 2004, pet. ref'd) (not designated for publication). An expert testified that it is unusual for a user to carry this amount of methamphetamine, dealers commonly make alterations to their vehicles to hide drugs, and users usually carry drugs on their person. See id. The Fort Worth Court found the evidence legally, but not factually, sufficient because there existed no evidence of any other circumstances tending to prove intent, such as "evidence that Hillman possessed an excessive amount of cash; that the drugs were packaged in a manner indicating intent to sell; that Hillman possessed any baggies, scales, or other items used in sales or transactions involving drugs; that Hillman was arrested in an area known for drug sales; that Hillman had any weapons in the car; or that Hillman tried to evade the police." Id. 2004 WL 742716, at *3, 2004 Tex.App. Lexis 3210, at * 10-11.
[*] (Chief Justice Gray dissents. A separate opinion will not issue. He notes, however, that as one-third of the so called thirteenth juror he does not agree that the evidence is factually insufficient. Though the opinion repeatedly states the evidence that was before the jury and upon which the jury and the Court drew the reasonable conclusion that Guyton was in possession of the drugs with the intent to distribute them, the Court has failed to direct the reader's attention to the objective reason in the record why the evidence is not factually sufficient as required by Watson v. State, 204 S.W.3d 404, 417 (Tex.Crim.App.2006). In discussing the history of the factual sufficiency review, the Court of Criminal Appeals stated that "the appellate court should support its judgment that a manifest injustice has occurred by explaining in exactly what way the State's evidence, while legally sufficient, is nevertheless too weak to withstand scrutiny, or in exactly what way it perceives the conflicting evidence greatly to preponderate against conviction." Id. at 414. The Court of Criminal Appeals went on to hold that:

An appellate court judge cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, he would have voted to acquit had he been on the jury. Nor can an appellate court judge declare that a conflict in the evidence justifies a new trial simply because he disagrees with the jury's resolution of that conflict. We have always held that an appellate court must first be able to say, with some objective basis in the record, that the great weight and preponderance of the (albeit legally sufficient) evidence contradicts the jury's verdict before it is justified in exercising its appellate fact jurisdiction to order a new trial.
Id. at 417. The Court's opinion fails to do this. It does not identify any evidentiary fact upon which the evidence is in conflict and from which differing conclusions could have been reached, so the reversal must be based upon the Court's view that the "great weight and preponderance of the evidence contradicts the jury's verdict." The decision in this appeal "smacks of an appellate court simply opting to `disagree' with the jury's verdict." Id. at 416. This view finds some support in the fact that able appellate counsel did not identify or brief this issue and that to reach it the Court must explain why, in this instance, it is violating the prohibition against dual representation. For the reasons stated in his dissent to the Court's May 27, 2008 letter order, Chief Justice Gray would not. Chief Justice Gray would affirm the conviction; and because the Court does otherwise, he respectfully dissents.)