**Opinion issued July 30, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00385-CR

———————————

**BILLY RAY JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

On Appeal from the 174th District Court
Harris County, Texas
Trial Court Case No. 1397773

---

## MEMORANDUM OPINION

After a bench trial, the trial court found appellant, Billy Ray Jones, guilty of

the offense of possession with intent to deliver Phencyclidine ("PCP"), weighing

more than 200 grams and less than 400 grams.[1]  After appellant pleaded true to the allegation that he had previously been convicted of a felony offense, the trial court assessed his punishment at confinement for 18 years.  In two issues, appellant contends that the evidence is legally insufficient to support his conviction and, alternatively, the trial court's judgment should be modified.

We modify the judgment of the trial court and affirm as modified.

## Background

Houston Police Department ("HPD") Officer C.T. Harrington testified that around 9:00 p.m. on August 12, 2003, he and his partner, Officer Zink, were patrolling an area of southeast Houston known for high narcotics activity.  As they drove by an apartment complex known for PCP activity, Harrington noticed a Chevrolet Avalanche truck, with its running lights on, backed into a parking space. Based on his training and experience, Harrington was concerned that a crime was possibly in progress.  He explained that the manner in which the truck was parked indicated that "someone's in the [truck] with a quick way to leave the apartment complex . . . or they're waiting on someone to return back to the [truck]." Harrington parked his patrol car so that he could observe the truck and initiate a traffic stop after it left the complex, if he witnessed a traffic violation.  Once the truck left the complex, he observed that it failed to make a complete stop at a stop

_____

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(8), 481.112(a), (e) (Vernon 2010).

2

sign. Harrington followed the truck for a short time before he activated his emergency lights and siren. Rather than stop his truck immediately, appellant, who was the driver, traveled approximately two-tenths of a mile, passing several places safe to stop, before he pulled over into a parking lot. Harrington then used a spotlight, which enabled him to see that the truck had three occupants—two in the front and one in the back. He noted that all of the occupants were making "very fast movements as if they were trying to gather something or stuff something down." Harrington specifically saw appellant making "furtive movements with his hands," while his head was engaged in "a ducking motion to immediately put something under the seat." Based on his training and experience, Harrington believed that "someone [was] hiding something that they had on their person or in the [truck], or someone [was] possibly reaching for a weapon that [was] stashed under the seat."

After Officers Harrington and Zink exited their patrol car, they asked the occupants of the truck to put their hands outside of the windows. Despite the request, the occupants continued to make continuous movements inside the truck, with no response to the officers. Suddenly, the front passenger, later identified as Daffany Chapman, jumped out of the truck and acted erratically while cussing and screaming—behavior that Harrington described as "a diversionary tactic." While

3

Zink attempted to control Chapman, Harrington observed continuous "head-bobbing" motions inside the truck.

After Officer Zink placed Chapman into the patrol car, Officer Harrington approached appellant, who had remained in the truck. As Harrington walked to the driver's side window, the passenger sitting behind appellant, later identified as Robert Harmon, opened his door. When he did, Harrington smelled a "very distinct" and "strong odor of PCP" coming from within the truck. He also noted that Harmon appeared to be "dazed and confused." And based on his prior experience, Harrington opined that Harmon was intoxicated on PCP.

When Officer Harrington returned his attention to appellant, he opined that appellant was under the influence of PCP. He based his opinion on appellant's slurred speech, strong odor, "dazed and confused" behavior, and inability to follow Harrington's commands. After Harrington helped appellant exit the truck, he handed him over to Officer Zink. He then asked the third occupant, later identified as Jason Warrior, to exit the truck. When he did, Harrington noticed that there was a baby in the back seat.

Officer Harrington then searched the front driver's side of the truck and found, in plain view, an "Ocean Spray" bottle resting toward the right under the driver's seat. He explained that a person would not have been able to shove the bottle to its position in the front seat area from the back seat area because of the

wires under the seat. Harrington also noted that the bottle was within appellant's reach and in view from where he had been sitting. Examining the bottle in court, Harrington noted that it contained significantly more liquid on the night of the offense than it did in court. He further explained that the Ocean Spray bottle, when he found it, contained a significant amount of PCP and, based on his training and experience, the amount of PCP in the bottle was for "pure delivery of PCP to someone."

Officer Harrington further testified that he found a smaller "Scope" bottle where Harmon had been sitting. Harrington explained that smaller bottles are used by:

> [T]he street-level dealers. What typically happens is the main dealer gives off portions. So, . . . it would be—the main portion would be the Ocean Spray bottle, it would be poured into a Scope bottle, and then the street dealers will go around the complex dealing from within that Scope bottle. The Scope bottle doesn't contain as much. So, if we do come in contact with them, it won't be as much. It's also more readily available for cigarettes to be dipped in them. When you see a Scope bottle, you'll see remnants of tobacco cigarette that have been dipped in them. Also, while we pursue individuals sometimes the Scope bottle is . . . easily thrown away and hard to find.

Officer Harrington also found near the Scope bottle, a baby bottle that "smelled of the remnants of codeine syrup." And he saw, in plain view sticking out from between the front seats, the butt of a .38 revolver. Harrington also seized

from appellant's pockets approximately $507 in cash, which, although not a large amount, was a "decent amount of cash to have on a person."

J. Moral, a chemist employed by the City of Houston to analyze evidence to determine whether it contains a controlled substance, testified that on August 26, 2013, she analyzed the contents of the Ocean Spray bottle and a smaller bottle seized by Officer Harrington. She explained that PCP is usually dissolved and diluted in different liquid substances such as acetone or ether, both of which are volatile and will evaporate over time, which is a normal occurrence. Moral noted that although liquid containing PCP will lose weight as it evaporates, the PCP remains. She further explained that the weight of the contents of the Ocean Spray bottle was different at the time of trial than when it was originally weighed because of the evaporation of the liquid. And Moral opined that the Ocean Spray bottle contained PCP, weighing 201.57 grams when she tested it. She further opined that the smaller bottle also contained PCP, weighing 22.63 grams when she tested it.

Moral further clarified that the contents of the Ocean Spray bottle had diminished because "PCP is usually dissolved in [a] mix with volatile liquids." Thus, evaporation is "normal." She further explained, "As you can see, this one is more of a—this Scope plastic bottle has more of a—it prevents less evaporation from the bottle than this one, but this is something normally you see throughout time." Although Moral received the evidence on August 12 or August 13 of 2013,

6

and tested the contents of the bottles on August 26, 2013, she was not alarmed by the ninety percent reduction of liquid in the Ocean Spray bottle at the time of trial.

## Legal Sufficiency

In his first issue, appellant argues that the evidence is legally insufficient to support his conviction for possession with intent to deliver PCP because the quantity of seized PCP was deficient, he had no intent to deliver it, and he was not knowingly in possession of it.

We review the legal sufficiency of the evidence by considering all of the evidence "in the light most favorable to the prosecution" to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S. W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

7

A person commits the offense of possession of a controlled substance with intent to deliver if the person knowingly possesses with intent to deliver PCP with an aggregate weight, including adulterants or dilutants, of 200 grams or more, but less than 400 grams. TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(8), 481.112(a), (e) (Vernon 2010).

*Quantity of PCP*

In regard to the quantity of PCP, appellant asserts that Moral's conclusion that the contents of the Ocean Spray bottle had evaporated to the extent that little more than ten percent remained by the trial date, while the contents of the Scope bottle remained intact, constitutes "no explanation at all and does not account for 'weight loss' of the liquid attributed to appellant." He further asserts that, "Any reasonable fact finder would have a reasonable doubt as to the original weight—a mere 1.57 grams over the amount triggering the jump in the minimum punishment—especially when viewed in the light of the totality of circumstances in this very weak case."

Viewing the evidence in the light most favorable to the verdict, Moral testified that PCP "is usually dissolved and diluted in different liquid substances such as acetone or ether." She explained that when tested on August 26, 2013, the Ocean Spray bottle contained PCP in a liquid form that weighed 201.57 grams, and the trial court admitted into evidence her lab report, which contained this same

8

information.  Moral further explained that the weight of the contents of the bottle was different at trial because of evaporation of the liquid.  And she clarified that the contents of the Ocean Spray bottle had diminished more than the contents of the Scope bottle because "as you can see, this [Ocean Spray bottle] . . . prevents less evaporation from the bottle than th[e] [Scope bottle]."  She further testified that she was not alarmed by the ninety percent reduction in volume of the liquid from the Ocean Spray bottle.

We recognize that appellant presented evidence that the contents of the Ocean Spray bottle weighed significantly less at the time of trial than when tested on August 26, 2013.  However, in a legal-sufficiency review we are required to defer to the factfinder's weight determinations and resolution of inconsistencies in the evidence.  *See Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991).  The trial court heard all of the evidence and could have reasonably found that, although the contents of the Ocean Spray bottle weighed significantly less at the time of trial, it did contain 201.57 grams of PCP when Moral weighed it on August 26, 2013.

Accordingly, we hold that the evidence is legally sufficient to support the trial court's implied finding that the PCP in the Ocean Spray bottle weighed greater than 200 grams, but less than 400 grams, when it was seized from under the driver's seat of the truck.  *See Reed v. State*, 158 S.W.3d 44, 50 (Tex. App.—

Houston [14th Dist.] 2005, pet. ref'd) (holding expert's testimony on quantity of narcotics legally sufficient even though defendant alleged lab report conflicted with expert testimony).

### *Intent to Deliver*

Appellant next argues that the evidence "is insufficient to support an inference that he intended to deliver" the PCP because the State did not establish that the truck that he was arrested in was registered to him or the same truck that Officers Harrington and Zink observed at the apartment complex, the State did not initially allege that he possessed the PCP with the intent to deliver it, there is no evidence of "who bought what," Chapman could have planted the Ocean Spray bottle under appellant's seat, there is no evidence "about who else" in the truck was "carrying cash of any amount," and he had been previously convicted only of "felony possession of a controlled substance," but not with intent to deliver.

Intent to deliver a controlled substance may be proved by circumstantial evidence. *Mack v. State*, 859 S.W.2d 526, 528 (Tex. App.—Houston [1st Dist.] 1993, no pet.). An oral expression of intent is not required; intent can be inferred from the acts, words, and conduct of the accused. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). Factors that courts have considered to establish the intent to deliver include, but are not limited to: (1) the nature of the location where the defendant was arrested; (2) the quantity of the controlled substances in

10

the defendant's possession; (3) the manner of packaging of the controlled substances; (4) the presence of narcotics paraphernalia (for either use or sale); (5) the defendant's possession of a large amount of cash; (6) the defendant's status as a narcotics user; and (7) an officer's testimony stating that the amount of the controlled substance recovered is consistent with the intent to deliver. *Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (considering factors one through six); *Reece v. State*, 878 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (considering factor seven). Expert testimony by experienced law enforcement officers may be used to establish an accused's intent to deliver. *See Mack*, 859 S.W.2d at 529.

Viewing the evidence in the light most favorable to the verdict, Officer Harrington testified that, based on his training and experience, the amount of PCP found in the Ocean Spray bottle was for "pure delivery of PCP to someone." He explained that he was familiar with how narcotics dealers use larger bottles, like the Ocean Spray bottle, and smaller bottles, like the Scope bottle, to effect narcotics transactions. Harrington explained that it is common for a primary PCP dealer to pour a portion of PCP from a larger bottle into a smaller bottle for street-level dealers to sell. For example, a street-level dealer can walk through an apartment complex, dealing directly from the smaller bottle. Thus, if a street-level dealer is caught by law enforcement, he will have a much smaller amount of PCP

11

in his possession. Harrington also explained that it is easier to dip cigarettes into smaller bottles, and if a street-level dealer is pursued by law enforcement, it is easier to throw away the smaller bottle, which is harder to find.

Officer Harrington further testified that he first observed appellant's truck in the apartment complex, which was known for high PCP activity. And when he searched appellant, Harrington found that he had approximately $507 in his pocket, which although not a large amount, it was a "decent amount of cash to have on a person." Harrington also noted that when he came into contact with appellant, appellant seemed "dazed and confused" and intoxicated on PCP because of his slurred speech, strong odor, and inability to follow Harrington's verbal commands.

In regard to appellant's assertion that the State did not establish that the truck that he was arrested in was registered to him or was the same truck that Officers Harrington and Zink observed at the apartment complex, we note that whether or not Harrington stopped the same truck that he observed in the apartment complex does not undermine the circumstantial evidence presented that appellant had the intent to deliver PCP. The trial court heard evidence that the significant amount of PCP seized from under appellant's seat was not for personal use. Evidence of possession of a large quantity of narcotics alone is legally sufficient to establish an intent to deliver when accompanied by the expert testimony of a law enforcement officer that the quantity at issue indicates an intent

to deliver. *See Reed*, 158 S.W.3d at 49 (holding evidence legally sufficient in light of expert testimony liquid codeine seized from defendant was large amount typically not for personal use); *Rhodes v. State*, 913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995) (noting "intent to deliver may be inferred from the quantity of drugs possessed"), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App. 1997).

In regard to appellant's assertion that the officers did not check whether he was the owner of the truck, we note that ownership of the place where narcotics are found is but one affirmative link to the contraband. More importantly, we note that appellant has not explained how ownership of the truck is relevant to the factual determination of his intent to deliver the PCP. *See* TEX. R. APP. P. 38.1(i). The fact remains that he was the driver of the truck. And, the Ocean Spray bottle containing 201.57 grams of PCP was found under the driver's seat of the truck.

Appellant further complains that the State did not initially allege that he possessed the PCP with the intent to deliver it. However, his complaint goes to the weight of the evidence, which was within the sole province of the fact finder. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The trial court could have resolved this inconsistency in favor of its verdict.

Appellant next complains that "assuming the apartment complex was where the PCP found in the [truck] was obtained by someone occupying it, there is no evidence who, if anyone entered the complex; someone could have brought it to

the [truck]. There is no evidence as to who bought what." The State did not present evidence as to "who bought what," but such evidence was not needed to establish that appellant unlawfully possessed PCP with the intent to deliver it. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(8), 481.112(a), (e). Again, the State established that appellant was the driver of the truck, and the Ocean Spray bottle containing 201.57 grams of PCP was found under his seat.

Appellant next argues that because he has been previously convicted of possession of a controlled substance, but not possession with intent to deliver a controlled substance, the evidence is legally insufficient to establish his possession with intent to deliver the PCP in this case. Whether appellant had ever been convicted of possession with intent to deliver a controlled substance is simply not relevant to whether the evidence in this case is legally sufficient to support his intent to deliver the PCP in this case.

Appellant further argues that because he was under the influence of PCP when arrested, it is less likely that he had the intent to deliver the PCP. In support of his argument, he relies on *Moreno v. State*, 195 S.W.3d 321 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) and *Erskine v. State*, 191 S.W.3d 374 (Tex. App.—Waco 2006, no pet.). In *Erskine*, the court noted that because the defendant did not possess narcotics' paraphernalia at the time of his arrest, it indicated an intent to sell the narcotics rather than intent to use the narcotics. 191 S.W.3d at

381 (quoting *Jordan v. State*, 139 S.W.3d 723, 726–27 (Tex. App.—Fort Worth 2004, no pet.)). The court concluded that factually-sufficient evidence supported the defendant's conviction of the offense of possession with intent to deliver because the State also presented evidence that the neighborhood where the defendant was arrested had a "high incidence of drugs and drug usage," the arresting officer testified that the amount of narcotics that the defendant had in his possession was more than an amount that a "typical user" would possess, the narcotics were packaged for delivery, and the defendant had a large amount of cash in the glove box of his car. *Id*. at 380–81.

In *Moreno*, the court concluded that the evidence was legally and factually sufficient to support the defendant's conviction of possession with intent to deliver narcotics because the defendant was found in possession of "two balls of black tar heroin" and a significant number of heroin balloons; a search of his car yielded more heroin balloons, cocaine, and a pill bottle containing more balloons filled with heroin; and an officer testified that the heroin was packaged as if ready to be sold and the amount possessed was consistent with distribution. 195 S.W.3d at 326. The court also noted that the defendant was not in possession of narcotics' paraphernalia with which to consume the heroin. *Id*.

Neither *Moreno* nor *Erskine* stands for the proposition that evidence establishing that a defendant is a user of narcotics means that he cannot possess the

intent to deliver narcotics. Here, the fact that appellant was under the influence of PCP at the time of his arrest is but one factor that the trial court could consider in determining whether appellant had the intent to deliver the PCP. *See Kibble v. State*, 340 S.W.3d 14, 19 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Moreno*, 195 S.W.3d at 326 ("[I]t is not necessary that appellant be found with large amounts of cash to show intent to deliver. Such evidence is only one factor of many that we may consider.").

Finally, appellant argues that "if anyone in the car had intent to deliver, it was Ms. Chapman, rather than [appellant]; she had the ability to put the Ocean Spray bottle on the floorboard between the two seats, and she was the only one in possession of a weapon, an accoutrement of many drug dealers." He asserts that "the large bottle might have been jointly bought with the intent of splitting it for personal use." And he further argues that "since the record contains no evidence about who else in the car was carrying cash of any amount, no reasonable factfinder could infer, beyond a reasonable doubt, from the cash in [appellant's] pocket that he planned to sell the PCP in either bottle." Both of appellant's arguments present other alternative hypotheses. However, the State does not have to disprove all reasonable alternative hypotheses which may be inconsistent with an accused's guilt for the evidence to be legally sufficient to support a conviction. *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999).

16

Accordingly, we hold that the evidence is legally sufficient to support the trial court's implied finding that appellant possessed the PCP with the intent to deliver it.

### Knowing Possession

Appellant argues that the evidence is legally insufficient to establish that he knowingly possessed the PCP found in the Ocean Spray bottle under his seat in the truck because "[a] reasonable factfinder could [not] infer" from the testimony that he "put the Ocean Spray bottle under the seat, rather than Ms. Jones" or the other passengers.

Possession means actual care, custody, control or management. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon Supp. 2014). To prove that appellant possessed PCP, the State was required to show that he exercised actual care, custody, control, or management over the PCP; he was conscious of his connection to it; and he knew what it was. *See Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011); *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *see also* TEX. PENAL CODE ANN. § 6.03(a), (b) (Vernon 2011) (defining intentionally and knowingly).

Possession need not be exclusive. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); *Woodard v. State*, 355 S.W.3d 102, 110 (Tex. App.— Houston [1st Dist.] 2011, no pet.). When the evidence establishes that an accused

17

was not in exclusive possession of the place where the controlled substance was found, the trier of fact cannot conclude that the accused knowingly possessed the controlled substance unless additional, independent facts and circumstances affirmatively link the accused to the controlled substance. *Blackman*, 350 S.W.3d at 594–95 (citing *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005)); *Kibble*, 340 S.W.3d at 18. The evidence "must establish, to the requisite level of confidence, that the accused's connection with the [contraband] was more than just fortuitous." *Brown*, 911 S.W.2d at 747. "This rule simply [states] the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house." *Poindexter*, 153 S.W.3d at 406.

Links that may establish that a defendant knowingly possessed contraband include: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or narcotics paraphernalia were present; (11) whether the

defendant owned or had the right to possess the place where the contraband was found; (12) whether the place where the contraband was found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006).

The State is not required to prove all of these links, and the "number of . . . links [proven] is not as important as the logical force that they collectively create." *Hubert v. State*, 312 S.W.3d 687, 691 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Moreover, "[t]he absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present." *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

Viewing the evidence in the light most favorable to the verdict, Officer Harrington saw appellant driving the truck, and, when Harrington activated his emergency lights and siren, appellant did not initially pull over and stop, despite having a number of opportunities to do so. Moreover, as Harrington attempted to stop appellant, he saw appellant making furtive gestures that continued even after appellant had stopped the truck. When Harrington apprehended appellant, he smelled the "strong odor of PCP" coming from inside the truck. And he noted that appellant acted "dazed and confused" and intoxicated on PCP.

Upon searching the driver's seat of the truck, Harrington found an Ocean Spray bottle containing PCP. It was in plain view and within reach of where appellant had been sitting. The evidence further showed that a smaller Scope bottle that contained PCP was found in the back seat of the truck along with a baby bottle that "smelled of the remnants of codeine syrup."

In regard to appellant's assertion that several exchanges between his trial counsel and Officer Harrington establish that Harrington "prevaricat[ed]," the testimony that appellant's counsel elicited during cross-examination merely raised an issue as to what Harrington could see versus what he could not see. Harrington testified that he saw the furtive gestures of appellant, Harmon, and Chapman inside the truck. He also testified that he did not see Warrior, who was sitting in the back seat, because either he was not moving or he may have been leaning down. Here, the trial court was the sole judge of the facts, the credibility of the witnesses, and the weight to be given the witness's testimony. *Williams*, 235 S.W.3d at 750. It could have believed Harrington when he testified that he could see appellant's furtive movements, which indicated that he was hiding something, but did not see Warrior because he was not moving.

Appellant next asserts that Officer Harrington's written report of the incident failed to include the following:

- that [appellant] and Mr. Harmon appeared to be under the influence of PCP, exhibiting slurred speech, not

responding to his commands, and smelling strongly of PCP;

- that the other two passengers did or did not appear to be under the influence;

- what the object in Ms. Chapman's hand when she got out of the car turned out to be;[2]

- that he saw [appellant], specifically, "bobbing his head";

- that it was not until he had arrived at the car that he discovered it contained Mr. Warrior and the child.

Although Harrington testified to additional facts beyond those written in his report, it was the trial court's responsibility to weigh Harrington's testimony and judge his credibility. *See id*. The trial court was free to resolve such inconsistencies in the evidence in the State's favor.

Accordingly, we hold that the evidence is legally sufficient to support the trial court's implied finding that appellant knowingly possessed the PCP.

## Modification of Judgment

In his second issue, appellant argues that the trial court's judgment should be modified to reflect that he pleaded true to only the allegation in one enhancement paragraph and the portion of the judgment reflecting that he waived his right to

---

[2]    Officer Harrington testified that Chapman was holding a cellular telephone.

appeal should be deleted. The State concedes that appellant is correct, and it also requests that we modify the trial court's judgment.

When the oral pronouncement of a sentence in open court conflicts with the written judgment, the oral pronouncement controls. *Donovan v. State*, 232 S.W.3d 192, 197 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The solution in such a case is to modify the written judgment to conform to the sentence that was orally pronounced in open court. *See id.*; *see also Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003); *Ex parte Madding*, 70 S.W.3d 131, 137 (Tex. Crim. App. 2002)). An appellate court has the power to correct a trial court's written judgment if the appellate court has the information necessary to do so. *Cobb v. State*, 95 S.W.3d 664, 668 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

The indictment in this case contained two enhancement paragraphs. In its first paragraph, the State alleged that appellant had previously been convicted of the offense of possession of a controlled substance on July 14, 2006. In the second paragraph, the State alleged that appellant used and exhibited a deadly weapon, namely, a firearm, during the commission of the instant offense and during his immediate flight therefrom. At trial, the State informed appellant and the trial court that it had abandoned the second paragraph. Nevertheless, the judgment of the trial court reflects that appellant pleaded true to the allegations in both paragraphs. Because the State abandoned the second paragraph concerning the use

of a deadly weapon and appellant did not plead true to this allegation, we hold that this portion of the trial court's judgment is not correct.

The judgment further states, under the heading of "special findings or orders," that "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED." However, the record reflects that the trial court certified appellant's right to appeal. *See* TEX. R. APP. P. 25.2(d) (requiring trial court to certify defendant's right of appeal). We note that in a non-plea-bargained case, a defendant has an automatic right to appeal. *See* TEX. R. APP. P. 25.2; *see also* TEX CODE CRIM. PROC. ANN. § 44.02(a) (Vernon 2006). Further, when there is a conflict between a trial court's "Certification of Defendant's Right of Appeal" and a judgment concerning a defendant's right to appeal, the certification controls, especially when the remainder of the record supports the statement in the certification. *Grice v. State*, 162 S.W.3d 641, 645 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Accordingly, we hold this portion of the trial court's judgment is not correct.

In regard to both errors, we have the necessary information to modify the trial court's judgment. Accordingly, we modify the judgment to strike the special finding or order of "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED." We further modify the judgment to strike the "TRUE" finding to the

headings of Plea to 2nd Enhancement/Habitual Paragraph and Findings on 2nd Enhancement/Habitual Paragraph.

We sustain appellant's second issue on appeal.

## Conclusion

We affirm the judgment of the trial court as modified.


Terry Jennings
Justice


Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).