

# IN THE
# TENTH COURT OF APPEALS

## No. 10-22-00018-CR

**CALEB FLETCHER,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 13th District Court
### Navarro County, Texas
### Trial Court No. D39599-CR

## MEMORANDUM OPINION

In one issue, appellant, Caleb Fletcher, challenges the sufficiency of the evidence supporting his conviction for possession of a controlled substance, methamphetamine, in an amount more than four grams but less than two hundred grams with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d). Because we conclude that the evidence is sufficient to support Fletcher's conviction, we affirm.

**Sufficiency of the Evidence**

On appeal, Fletcher concedes that the evidence is legally sufficient to show that he was in possession of methamphetamine. Instead, Fletcher argues that his conviction is not supported by sufficient evidence because he mistakenly believed that the pills that were found in a motel room he occupied were methamphetamine, as opposed to ecstasy. Thus, Fletcher asserts that he did not "knowingly" possess a controlled substance.

STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial

evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

A person commits the offense of possession of a controlled substance with intent to deliver if he knowingly possesses a controlled substance, such as methamphetamine, in an amount between four and 200 grams with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112(d); *see also Erskine v. State*, 191 S.W.3d 374, 379 (Tex. App.—Waco 2006, no pet.) (citing *Nhem v. State*, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.)). Under the Texas Penal Code, "[p]ossession" is defined as "actual, care, custody, or management." Tex. Penal Code Ann. § 1.07(a)(39). Thus, to prove unlawful possession of a controlled substance, the State must establish that the accused (1) exercised care, control, or management over the contraband, and (2) knew the substance was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005),

*overruled on other grounds by Robinson v. State*, 466 S.W.3d 166, 173, & n.32 (Tex. Crim. App. 2015); *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Possession may be proven by direct or circumstantial evidence, but the evidence must show that the accused's connection with the substance was more than fortuitous. *Poindexter*, 153 S.W.3d at 405-06; *see Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011). Fletcher does not challenge the intent-to-deliver element on appeal.

When the accused is not in exclusive possession of the place where the contraband is found, the State must show additional facts and circumstances that affirmatively link the accused to the contraband. *See Poindexter*, 153 S.W.3d at 406; *see also Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.). An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *Olivarez*, 171 S.W.3d at 291.

Texas courts have identified the following factors that may affirmatively link the accused to a controlled substance:

> (1) The defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the

defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016) (quoting *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006)). Texas courts have further recognized that this is a nonexclusive list of factors that may be sufficient, either individually or in combination, to establish a defendant's possession of a controlled substance. *Evans*, 202 S.W.3d at 162 n.12. "It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Id*. at 162. The ultimate inquiry remains that set forth in *Jackson*: "Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 500 S.W.3d at 414 (citing *Jackson*, 443 U.S. at 318-19).

DISCUSSION

On July 8, 2019, Officer Jacob Palos of the Corsicana Police Department observed a drug sale while conducting surveillance outside of a Traveler's Inn motel in an area known for drug trafficking. He observed an exchange between a male, later identified as Matthew Elmore, and a female, later identified as Tyqutari Lewis, outside one of the motel rooms. Officer Palos testified that, based on his training and experience, this interaction was an exchange of money for drugs. After Elmore departed, Officer Palos initiated a traffic stop of Elmore's vehicle. Officer Palos found cocaine in Elmore's underwear, as well as a bag of marihuana inside the vehicle. Based on statements made

by Elmore that he had purchased drugs from Lewis's motel room before, as well as observations of the drug exchange at the motel, Officer Palos obtained a warrant to search the motel room from which Lewis emerged.

When Officer Palos and three other Corsicana Police officers executed the search warrant on the motel room, they observed Fletcher retreat to a bathroom, which the officers believe can be indicative of a consciousness of guilt. Fletcher, Lewis, and three children under the age of six were present in the motel room. Officers also found cell phones; eleven individually packaged bags of marihuana; loose marihuana debris; one plastic bag containing 31 pills; two digital scales, one of which that had suspected traces of cocaine; a partially smoked marihuana cigarette, and a THC oil cartridge. Officers later learned that Elmore communicated with Fletcher via Snap Chat or text message to buy drugs.

Officer Michael Self of the Corsicana Police Department testified that he was present during the search of the motel room and that he observed Lewis and Fletcher in the motel room with "a bunch of different colorful pills which I believed to be ecstasy at that time." Lewis later testified that the pills found inside the motel room were ecstasy, otherwise known as "XOs," and that Fletcher and his friend had brought them to the motel room two or three days prior to the search. Lewis admitted that she had previously told police that Fletcher sold cocaine and MDMA when he could. Lindsay Ornelas, a forensic scientist for the Texas Department of Public Safety, tested 23 of the pills found in

the motel room and concluded that they weighed 4.31 grams, plus or minus 0.03 grams. Furthermore, Ornelas's lab report was admitted into evidence showing that the 23 pills were methamphetamine, not ecstasy or MDMA.[1]

Officers also searched Fletcher's cell phone for narcotics transactions pursuant to the search warrant. Officer Jarrett Girard of the Corsicana Police Department discovered numerous text messages detailing Fletcher's sale of "green," "white," and "XOs." Officer Girard also noted that, in the drug trade, "XOs" are ecstasy.

The foregoing evidence touches on many of the *Evans* links. *See Evans*, 202 S.W.3d at 162 n.12; *see also Tate*, 500 S.W.3d at 414. Based on the logical force of all of the evidence, both direct and circumstantial, we cannot say that Fletcher's connection to the drugs found inside the motel room, including the methamphetamine pills, was merely fortuitous. *See Tate*, 500 S.W.3d at 414; *Evans*, 202 S.W.3d at 162; *Poindexter*, 153 S.W.3d at 405-06. The evidence adduced at trial establishes Fletcher's ongoing involvement with drugs and links him to the methamphetamine pills. *See Evans*, 202 S.W.3d at 162; *Poindexter*, 153 S.W.3d at 405; *see also Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). Accordingly, viewing the evidence in the light most favorable to the jury's verdict, we cannot conclude that the evidence is insufficient to support appellant's conviction.

---

[1] Ecstasy, otherwise known as 3-4 methylenedioxy methamphetamine, and methamphetamine are both controlled substances under the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.103(a)(1).

*See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d); *see also Zuniga*, 551 S.W.3d at 732-33; *Erskine*, 191 S.W.3d at 379; *Nhem*, 129 S.W.3d at 699.

And with respect to Fletcher's contention on appeal that the evidence is insufficient as to the knowing element based on his mistaken belief that the pills were ecstasy, rather than methamphetamine, we note that the Texas Penal Code only requires Fletcher to have knowledge that he possessed a controlled substance, not that he knew the actual drug he possessed. *See Carter v. State*, 575 S.W.3d 892, 899 (Tex. App.—Amarillo 2019), *aff'd*, 620 S.W.3d 147 (Tex. Crim. App. 2021) (noting that to show *mens rea*, "[t]he prosecutor may show 'the defendant' 1) knew 'he possessed a substance listed on the schedules, even if he did not know which substance it was' or 2) knew 'the identity of the substance he possessed." (quoting *McFadden v. United States*, 576 U.S. 186, 192, 135 S. Ct. 2298, 2304, 192 L. Ed. 2d 260 (2015))); *Blackman*, 350 S.W.3d at 594; *Poindexter*, 153 S.W.3d at 405; *Moreno*, 195 S.W.3d at 325; *see also Rand v. State*, No. 14-16-00409-CR, 2017 Tex. App. LEXIS 9014, at *24 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (mem. op., not designated for publication) ("Although none of the messages contain methamphetamine, the Texas Penal Code only requires appellant to have knowledge that he possessed a controlled substance, not that he knew the drug he possessed was actually methamphetamine." (citing TEX. HEALTH & SAFETY CODE ANN. § 481.112)). We therefore overrule Fletcher's sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.


MATT JOHNSON
Justice


Before Chief Justice Gray,
     Justice Johnson,
     and Justice Smith
Affirmed
Opinion delivered and filed October 12, 2022
Do not publish
[CRPM]

